## COMMERCIAL TRAVELERS' ASS'N v. NEWKIRK et al.

(Supreme Court, Special Term, Onondaga County. November, 1888.)

1. EXEMPTIONS—INSURANCE MONEY—WIDOW.

Where the life of the husband has been insured for the benefit of his wife, after his death no exemption attaches in favor of the wife and against her creditors to the proceeds of the insurance, either before or after the money has been paid to her.

2. SAME—CO-OPERATIVE ASSOCIATIONS.

Laws N. Y. 1883, c. 175, § 19, (Laws 1884, c. 116,) relating to co-operative or assessment life insurance associations, which provides that the money paid by any association authorized to do business under such act of 1883 shall be exempt from legal process to pay the debt of a member or the widow of a deceased member, has no application to such existing associations that did not reincorporate under the act of 1883, as they are thereby permitted to do.

3. ATTACHMENT—PROPERTY SUBJECT TO—INSURANCE MONEY.

The sum due by a mutual benefit association to the widow of a deceased member, though not yet paid to her, may be attached by her creditors without being taken into possession by the officer; for Code Civil Proc. § 648, authorizes the attachment of a cause of action arising on contract, and section 649 prescribes a mode of attachment of personalty incapable of manual delivery.

At chambers. Bill of interpleader by the Commercial Travelers' Association of the State of New York against Frances Newkirk and others.

The plaintiff is a co-operative life insurance society, incorporated in December, 1872, pursuant to "An act for the incorporation of benevolent, charitable, scientific, and missionary societies," passed April 12, 1848. Its object, as defined in its charter, is to pay a fund to the family or friends of deceased members, and in other ways to take care of and protect them; or, as defined in the preamble to its constitution, to secure voluntary contributions to the widows and orphans of the brotherhood, or to such beneficiaries as they may designate. On the 3d of March, 1883, one Dewitt H. Newkirk became a member of the association, and so continued until July 20, 1887, when he died, leaving a widow, the defendant Frances Newkirk, who was designated in his application for membership as the person to whom he desired his death loss should be paid. All of the dues and assessments payable by Mr. Newkirk as a member of said association subsequent to May 1, 1886, were paid by Mrs. Newkirk from her own money; but all prior to that date were paid by her husband. The payments on account of dues and assessments did not exceed $75 in any year while Mr. Newkirk was a member. After the death of the assured his wife presented proofs of loss to the plaintiff, which thereupon, though its executive committee, duly ordered an assessment to pay the losses arising from the death of Mr. Newkirk and four other members. The first payment was received October 11, 1887, and the assessment was closed on December 3, 1887, which was the last day for members to pay. On that day the sum of $5,000 was in the treasury of the association for the payment of the death loss in question, but it was not separated from the other proceeds of said assessment. In August and September, 1887, certain attachments against the property of said Frances Newkirk were issued to the sheriff of Onondaga county, who, by virtue thereof, took all the steps required by the statute to perfect an attachment upon said claim of $5,000, except that he did not take any money into his custody, for the reason that no part thereof had been received by the plaintiff at the date of the levy. Subsequently executions were issued to said sheriff upon judgments recovered in the actions in which attachments had been issued, and he took the usual steps to perfect a levy thereunder upon said sum of $5,000. Said attachments and judgments were based upon debts contracted by Mrs. Newkirk prior to the death of her husband. As the fund was claimed by several adverse parties, the plaintiff refused to pay to either, but filed this bill of interpleader, making the beneficiary and the attaching creditors parties, and offering to pay said sum to such person or persons as the court should direct. Mrs. Newkirk claims by her

answer that the entire amount should be awarded to her, while the attaching creditors contend that so much thereof as will satisfy their demands should be paid over to them. The foregoing, among other facts, were agreed upon by the parties, and the questions of law arising therefrom presented to the court for decision.

*E. Nottingham,* for plaintiff.   *A. T. Clearwater,* for defendant Newkirk. *John E. Smith,* for defendants Hart and others.

VANN, J. The plaintiff admits its full liability to one or the other of the claimants, shows that there is a question as between them to be tried, and that it would incur hazard in paying to either. It was therefore regular in filing this bill to compel the defendants to interplead and settle their differences without further risk or annoyance to itself. *Railroad Co.* v. *Arthur,* 90 N. Y. 234. Upon payment of the fund into court, after deducting its taxable costs, the plaintiff will be entitled to a decree relieving it from further liability to any party to the action. The controversy between the defendants presents the following questions for decision: *First.* Is the money in question exempt from execution as to all the debts of Frances Newkirk contracted prior to the death of her husband? *Second.* Did the attaching creditors acquire liens upon the claim or money in proportion to the amount of their respective demands against said Frances Newkirk? As early as 1840 an act was passed authorizing any married woman to cause the life of her husband to be insured for her benefit, and providing that the net amount of the insurance should be payable to her, for her own use, free from the claims of his creditors or representatives; but that such exemption should not apply where the amount of premium annually paid should exceed $300. 3 Rev. St. p. 2335, (7th Ed.;) Laws 1840, c. 80. Subsequently this act was amended so as to extend the exemption to the demands of any person claiming "by, through, or under" the husband, and providing that when the premium should exceed $500 a year the exemption should not apply to the excess. 3 Rev. St. p. 2337; Laws 1858, c. 187; Laws 1870, c. 277. The act has been still further amended so as to authorize and regulate the disposition of such policies by surrender, or by the wife's last will and testament, but not in any other way. 3 Rev. St. p. 2339; Laws 1870, c. 277; Laws 1873, c. 821. There can be no question that under these statutes an insurance policy with an annual premium less than $500 is exempt from the claims of the husband's creditors; but is it also exempt from the claims of the wife's creditors after her husband's death? The court of appeals has recently held that such a policy cannot, during the life of the husband, be subjected to the lien of creditors, either of the husband or wife. *Baron* v. *Brummer,* 100 N. Y 372, 3 N. E. Rep. 474. This decision is based, so far as the husband is concerned, upon the words of the statute expressly exempting the policy from the claims of his creditors. As to the wife, it rests upon a line of decisions holding, not that the policy is expressly declared by statute to be exempt from the demands of her creditors, but that it is not assignable except in the cases where assignments are authorized by statute, and that the court will not compel her to do that which she could not voluntarily do. *Eadie* v. *Slimmon,* 26 N. Y 9–17; *Barry* v. *Society,* 59 N. Y. 587, 593; *Wilson* v. *Lawrence,* 76 N. Y 585; *Brummer* v. *Cohn,* 86 N. Y. 11; *Smillie* v. *Quinn,* 90 N. Y. 492–497. Practical exemption is thus worked out for the wife, owing to the non-assignability of the policy, except in the manner provided by the legislature. While the result is the same in the case of either husband or wife, it is reached in the one instance because the policy is actually exempt, while in the other it is because the policy cannot be assigned. This distinction, while unimportant during the life-time of the husband, becomes of controlling importance upon his death, when a cause of action accrues in favor of the wife that she may assign without any statutory hindrance. Although she cannot as-

sign the policy while it is an existing contract, after it has become a contract executed on her part, and has ripened into a cause of action in her favor to recover a definite sum of money, she has the same right to dispose of it that she has to dispose of any other property belonging to her. The common law gives her this right, and, as there is no statutory prohibition, she needs no statutory permission. Upon the death of the husband the policy becomes realized personal property, and stands upon the same footing as any other chose in action. Prior to that date it is simply the creature of a statute, existing by force of and subject to all the restrictions, express and implied, of the statute. Such a contract, void at common law as a wager policy, exists only as permitted by the statute, and has only such qualities as the statute gives it. As the statute did not give it the quality of assignability, except in certain specified cases, it could not be assigned in any other way, or for any other purpose. The wife could not, for this reason, assign the contingency created by the policy; but why can she not assign the certainty created by the death of her husband? It has been held by this court in two recent cases that after the money has been paid over to the wife. it may be seized by her creditors. *Bolt* v. *Keyhoe,* 30 Hun, 619; *Crosby* v. *Stephan,* 32 Hun, 478. An earlier case holding otherwise must be regarded as impliedly overruled by these authorities, although they do not mention it. *Leonard* v. *Clinton,* 26 Hun, 288. In *Crosby* v. *Stephan, supra,* the court said: "The policy has become payable, and it has been paid. The money paid is the widow's absolute property. Like the property of other persons, it is liable for its owner's debts. She is under the common obligation of all persons to pay debts, and, unless the law has expressly exempted this property, it is liable. We must not permit sympathy for the widow to outweigh an application of the claims of common honesty." There is no foundation for a distinction between a policy which has become payable, with the money ready to pay it, and the proceeds of such policy when actually paid. Unless both are exempt, neither is exempt. If one is assignable, both are assignable. All property that can be voluntarily disposed of by the owner, unless exempt by legislative enactment, may be reached by creditors.

It is, however, claimed that, independent of the points already considered, the fund in question, whether paid over or not, is exempt from the payment of any debt of the wife contracted before the death of her husband, because the policy was issued by a co-operative insurance company. This position is founded on chapter 175 of the Laws of 1883, and chapter 116 of the Laws of 1884. The former act provides for the incorporation and regulation of co-operative or assessment life and casualty insurance associations; authorizes the reincorporation of existing societies transacting life insurance upon the co-operative plan, but does not make it obligatory; defines what kind of associations are to be deemed to be engaged in the business of life insurance upon the assessment plan, subjects them to the provisions of the act, and requires them to report annually to the superintendent of the insurance department. Section 19 of said act is as follows, viz.. "The money or other benefit, charity, relief, or aid to be paid, provided, or rendered by any corporation, association, or society authorized to do business under this act shall be exempt from execution, and shall not be liable to be seized, taken, or appropriated by any legal or equitable process, to pay any debt or liability of a member." Chapter 116 of the Laws of 1884 provides that the exemption of the beneficiary fund of a co-operative life insurance corporation "now provided by the act creating such corporation, or under which it is organized," shall extend to the part of the fund paid to the widow of a deceased member. The plaintiff did not reincorporate under the statute of 1883, but is still doing business under the statute of 1848. It is not authorized to do business under the former, but is under the latter. While its conduct in many respects is regulated by the former, its right to do business depends wholly on the latter. No

exemption of the beneficiary fund is provided by the act of 1884, under which the plaintiff was organized; and hence the act of 1884 has no application to this case.     There is no exemption mentioned in the act creating the plaintiff or under which it was organized, and hence no exemption to extend to Mrs. Newkirk, as the widow of a deceased member.     No exemption is created by the act of 1884, but an exemption created by another act is extended to the widow of deceased members.     The exemption thus extended must exist in the charter of the society or in the act under which it was incorporated.     In the case under consideration there was no exemption to extend, and hence none was extended.     If the plaintiff desires to secure the privilege of the unusual exemption provided by the act of 1884, it can easily do so by reincorporating under the act of 1883.     Its members, however, may not wish for a privilege that does not encourage the payment of honest debts

The remaining point relates to the lien of the attachments, which is questioned by Mrs. Newkirk because the sheriff did not take the money into his custody.     At the time the warrants of attachment were served, the money had not been paid over to the plaintiff, so that it was impossible for him to take it into custody.     It would be a strange result, however, if an important provisional remedy should be incapable of enforcement against a claim worth $5,-000 simply because it had not been coverted into money, so as to be capable of manual seizure.     A cause of action arising upon contract is made subject to a levy under an attachment by section 648 of the Code of Civil Procedure. The next section describes how property is to be attached, and provides for a levy—*First*, upon real property; *second*, upon personal property capable of manual delivery, including bonds, promissory notes, and other instruments for the payment of money; *third*, upon other personal property, including demands other than those last named.     The claim of Mrs. Newkirk against the plaintiff fell within the third subdivision at the time the attachment was levied.     It was a demand, not for the payment of money, but for the proceeds of an assessment to be made upon the members of the association.     It was capable of enforcement by legal proceedings, and was a cause of action arising on contract, within the meaning of section 648.     The stipulation of the parties settling the facts states that the sheriff "duly took all the steps and performed all the acts required by sections 644 and 649 of the Code of Civil Procedure to perfect an attachment" upon the claim in question, except that he did not "take any of said money into his custody, for the reason that no part of the same had at that time been received by the plaintiff."     Thus it appears that the sheriff took every step that was adapted to the situation.     As there was no money or other personal property capable of manual delivery, he did not proceed on that theory.     He did, however, take all the steps necessary to attach the demand against the plaintiff belonging to Mrs. Newkirk, and the creditors whom he represented thereby secured a lien upon the fund in question.     The stipulation of the parties, when read in connection with the statute, leaves no uncertainty as to this point.     Findings may be prepared, and a decree entered—*First*, releasing the plaintiff from all further liability to any party to this action upon payment into court of the money in question, less its taxable costs; *second*, awarding to the attaching creditors so much of the remainder of such money as will satisfy their claims, including sheriff's fees upon both the attachments and executions, and a single bill of costs; *third*, directing the payment of the remainder to the defendant, Mrs. Newkirk.