LOUIS AMBERG et al., Appellants, *v.* THE MANHATTAN LIFE INSURANCE COMPANY OF NEW YORK, Respondent.

INSURANCE — MONEY PAYABLE TO WIFE UPON MATURED POLICY ISSUED BY ORDINARY LIFE INSURANCE COMPANY UPON HUSBAND'S LIFE NOT EXEMPT FROM ATTACHMENT. Money due upon a matured insurance policy, written by an ordinary life insurance company upon the life of a husband, payable to his wife, is subject to levy under a warrant of attachment issued against the property of the wife in an action brought to recover a debt owing by her.

*Amberg* v. *Manhattan Life Ins. Co.*, 56 App. Div. 343, reversed.

(Argued May 15, 1902; decided May 27, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 8, 1901, reversing a judgment in favor of plaintiffs entered upon a verdict directed by the court and an order denying a motion for a new trial and dismissing the complaint.

On the 31st of May, 1894, the defendant, a domestic insurance corporation, doing an ordinary life insurance business, issued a policy on the life of Emanuel Bourbon, whereby it promised to pay to Blanche Bourbon, his wife, the sum of $5,000 on the 24th of May, 1899, or on his death, if he died before that date. On the 31st of August, 1899, after the policy had become due and was payable, but before it had been paid, the plaintiff Amberg caused a levy to be made upon the sum of money due to Mrs. Bourbon thereon under an attachment issued in an action commenced by him against her in the Supreme Court of this state. January 5th, 1900, judgment was rendered in said action by default, the summons having been served by publication, in favor of the plaintiff and against the defendant therein for the sum of $23,772.24. Execution having been issued upon said judgment and returned unsatisfied, this action was commenced, by leave of said court, against the defendant herein by said judgment creditor and the sheriff, who levied the attachment, to recover the amount due upon the policy. The defendant answered, and, after admitting certain portions of the complaint, pleaded a general denial only.

Upon the trial the facts alleged in the complaint were proved without contradiction and the defendant moved to dismiss the complaint upon the ground that "neither the policy in question nor its proceeds are subject to the attachment in evidence in the case, nor to an execution, nor can the policy or its proceeds under the statutes and laws be reached by a creditor of the wife;" that neither the policy nor the proceeds thereof are property according to law and that judgment for the plaintiffs would be no protection to the defendant against an action by Mrs. Bourbon for the sum due upon the policy. The motion was denied and the defendant excepted. Neither party asked to go to the jury, and, under the direction of the court, a verdict was rendered in favor of the plaintiffs for the amount due on the policy and interest. The judgment entered accordingly was reversed upon appeal to the Appellate Division and the defendant appealed to this court.

*Herbert H. Maass* and *Alexander Blumenstiel* for appellants. The claim that if the defendant paid the amount to the sheriff here it would have no defense in an action brought by Blanche Bourbon cannot be raised for the first time at the trial. (*O'Brien* v. *G. W. Co.*, 50 N. Y. 128; Code Civ. Pro. § 820.) A debt owing from an insurance company to a beneficiary, under an insurance policy, is attachable at the suit of a creditor in a case where the policy has actually matured and the company stands as a debtor to the beneficiary. (*C. T. Assn.* v. *Newkirk*, 16 N. Y. Supp. 177; *Holt* v. *Keyhoe*, 30 Hun, 619; *Crosby* v. *Stephan*, 32 Hun, 478.)

*Edward S. Rapallo* for respondent. The amount due upon this policy is payable to the wife free from the claims of her creditors, and neither such amount nor the policy itself is subject to the plaintiff's attachment nor execution for the reason that the policy is upon a husband's life and for the benefit of his wife. (L. 1858, ch. 187; L. 1862, ch. 70; L. 1866, ch. 656; L. 1870, ch. 277; L. 1896, ch. 272; *Baron* v. *Brummer*, 100 N. Y. 372; *Brummer* v. *Cohn*, 86 N. Y. 11; *Brick* v. *Campbell*, 122 N. Y. 337; *Frank* v. *M. L. Ins. Co.*, 102 N. Y. 266; *Leonard* v. *Clinton*, 26 Hun, 288; *Smilie* v. *Quinn*, 90 N. Y. 492; *Romaine* v. *Chauncey*, 129 N. Y. 566; *Eadie* v. *Slimmon*, 26 N. Y. 9.)

Vann, J. The question presented by this appeal is whether the money due upon a matured insurance policy, written by an ordinary life insurance company upon the life of a husband, payable to his wife, is subject to levy under a warrant of attachment issued against the property of the wife in an action brought to recover a debt owing by her.

This question has never been passed upon by the Court of Appeals. While we have held that such a policy cannot be seized by the creditors either of the husband or the wife before it has become due and payable, we have not held that it is exempt from the claims of her creditors after the contingent

promise has ripened into an actual promise and the right of the beneficiary has become absolute.   There has never been a statute expressly exempting a policy, issued by a regular life insurance corporation, from the demands of the wife's creditors, although there have been statutes of that kind which applied to the policies or certificates issued by co-operative insurance societies.   The reason for holding that the policy is practically exempt until it becomes due, is that the wife could not assign it until it matured, because " it would be against the spirit and policy of the statute to allow such a policy to be assigned by a wife during the lifetime of her husband," or before the maturity of the policy. (*Eadie* v. *Slimmon,* 26 N. Y. 9; *Barry* v. *Equitable Life Assur. Socy.,* 59 N. Y. 587; *Brummer* v. *Cohn,* 86 N. Y. 11; *Smillie* v. *Quinn,* 90 N. Y. 492; *Baron* v. *Brummer,* 100 N. Y. 372; *Frank* v. *Mutual Life Ins. Co.,* 102 N. Y. 266; *Brick* v. *Campbell,* 122 N. Y. 337.) Referring to said statute, which is hereinafter set forth, the court said in *Barry* v. *Equitable Life Assur. Socy.* (*supra*) : " Without that act, when this policy was issued, the insurance money, being for premiums paid out of the funds or property of the husband, could not have been retained from the personal representatives or creditors.   That act sought that result, not for the sake of the woman while a wife, but when a widow ; not that she might sell or assign the contingency which was created by the policy, but that it should be kept for her until, by the death of her husband, she surviving, it became realized personal property."   Hence, the courts have refused to compel the wife to do that which she could not do of her own volition.   The reason for thus giving practical exemption to the policy before the insurance became due, has no application to a policy after it has become due, for she can then assign it as she can any other cause of action.   As the reason for the rule ceases to exist as soon as the policy matures and becomes assignable, should the rule, made by the courts and not by the legislature, be extended to a policy after it has matured ?   This is the precise question before us.

Courts have no power to declare property exempt from the

claims of creditors, unless there is some statute which, either expressly or by reasonable implication, requires it. The gene- ral rule is that all property is subject to levy and sale upon execution and every exception must be founded upon a stat- ute, for the subject is within the control of the legislature, not of the courts. The earliest statute upon the subject was entitled, " An act in respect to insurances for lives for the benefit of married women," which provided that,

" It shall be lawful for any married woman, by herself, and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her hus- band, the sum or net amount of the insurance becoming due and payable, by the terms of the insurance, *shall be payable to her, to and for her own use*, free from claims of the repre- sentatives of her husband, or any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars." (L. 1840, ch. 80, § 1.)

When this statute was enacted married women were still under the common-law disability to enter into contracts, but by subsequent legislation that disability has gradually been removed, until at last a wife is enabled to contract with the freedom of a *feme sole*. (L. 1896, ch. 272, § 21.)

The act of 1840 was amended several times in particulars not now important, for all the amendments left the section above quoted substantially unchanged. (L. 1858, ch. 187; L. 1866, ch. 656; L. 1870, ch. 277; L. 1873, ch. 821; L. 1879, ch. 248.) All of these statutes, including the original act, were repealed by the Domestic Relations Law, which made the following provision upon the subject:

" A married woman may, in her own name, or in the name of a third person, with his consent, as her trustee, cause the life of her husband to be insured for a definite period, or for the term of his natural life. Where a married woman sur- vives such period or term she is *entitled to receive the insur-*

*ance money, payable by the terms of the policy, as her sepa-rate property,* and free from any claim of a creditor or repre-sentative of her husband, except, that where the premium actually paid annually out of the husband's property exceeds five hundred dollars, that portion of the insurance money which is purchased by excess of premium above five hundred dollars, is primarily liable for the husband's debts.  \*  \*  \* A policy of insurance on the life of any person for the benefit of a married woman, is also assignable and may be surrendered to the company issuing the same, by her, or her legal repre-sentative, with the written consent of the assured."   (L. 1896, ch. 272, § 22.)

While the earlier statute provided that the policy should be for the "sole use" of the wife and that the insurance money should "be payable to" her, "to and for her own use" free from claim by her husband's creditors, the language of the later act is that "she is entitled to receive the insurance money  \*  \*  \*  as her separate property." This is the only act which now, even by implication, can be claimed to exempt a policy or its proceeds from the claims of the wife's creditors.  If the words "payable to her, to and for her own use," as used in the act of 1840, authorized an exemption by implication, the language of the act now in force lends no support to such a construction, for they simply entitle the wife to receive the money as her separate property.  This means that she owns it, as she owns any other property belonging to her separate estate.  The Insurance Law pro-vides that "all money or other benefit, charity, relief or aid, *to be paid*" by co-operative societies "shall be exempt from execution," both as to members and beneficiaries, but this language does not exempt the money after it has been paid over.  (*Bull* v. *Case*, 165 N. Y. 578.)  The words of the Insurance Law impress us as much stronger than those used in the Domestic Relations Law.

The statutes relating to the exemption of policies issued by co-operative insurance companies on the life of a husband for the benefit of his wife were quite different in form and sub-

stance from the act of 1840, for some of them expressly exempted not only the policy, but the proceeds thereof, after they were paid over to the wife, from the claims of her creditors. (L. 1883, ch. 175; L. 1884, ch. 116; L. 1889, ch. 520; L. 1892, ch. 690, § 238.) The policy of the legislature, however, even with reference to co-operative insurance contracts, has been so changed by the Insurance Law that, as we have recently held, the proceeds of such a policy after they have actually been paid over to the beneficiary are not exempt, but are subject to levy under an attachment against property. (*Bull* v. *Case*, 41 App. Div. 391; 165 N. Y. 578.) In deciding that case we said: "Just as any money or property which is left by a decedent may be taken for the debts or liabilities of those to whom it is given after it has been paid to them, so the proceeds of an insurance policy or certificate may be compulsorily devoted to the same purpose when the beneficiary comes into possession thereof. * * * It is obvious that no principle of public policy can justify unlimited exemptions of such moneys, and nothing but the explicit and unqualified fiat of the legislature would warrant the courts in going to that extent." Judge CULLEN did not sit in this court upon the argument of that case, because he sat below, but his vigorous opinion when he wrote for the Appellate Division shows that his views are the same as those expressed by us. The language quoted applies with greater force to policies issued by regular insurance companies, for there has never been any statute which expressly exempted their policies or the proceeds thereof from the payment of debts contracted by the wife. Therefore, if the money due upon the policy now under consideration had actually been paid over to the beneficiary, it would not have been exempt. Was it exempt when it was in the possession of the insurance company ready to be paid over to her? Although not exempt if it reached her hands, was it exempt five minutes before when it was in the hands of the company and about to be paid to her to discharge a debt which the company owed her? Upon this question I cannot express my views more clearly than to repeat, in substance,

what I wrote upon the subject some years ago in *Commercial Travelers Association* v. *Newkirk* (16 N. Y. Supp. 177). There can be no question that an insurance policy, with an annual premium of less than five hundred dollars, is exempt from claims of the husband's creditors, but is it also exempt from the claims of the wife's creditors after her husband's death? We held in *Baron* v. *Brummer* (*supra*) that such a policy could not, during the life of the husband, be subjected to the lien of creditors either of the husband or wife. That decision was based, so far as the husband is concerned, upon the words of the statute expressly exempting the policy from the claims of his creditors. As to the wife, it rested upon a line of decisions, already cited, holding, not that the policy is exempt from the demands of her creditors, but that it was not then assignable, except in the cases where assignments were authorized by statute, and that the court would not compel her to do that which she could not voluntarily do. Practical exemption was thus worked out for the wife, because the policy was not assignable until it became due, except as provided by the legislature. While the result was the same in the case of either husband or wife, it was reached in the one instance because the policy was actually exempt, and in the other because it could not be assigned. This distinction, while unimportant during the lifetime of the husband or before the maturity of the policy, became of controlling importance when the policy matured, as thereupon a cause of action accrued in favor of the wife that she could assign without let or hindrance. Although she could not lawfully assign the policy while it was an executory contract, after it became a contract executed on her part and had ripened into a cause of action in her favor to recover a definite sum of money, she had the same right to dispose of it that she had to dispose of any other property belonging to her separate estate. The common law gave her this right, and, as there was no statutory prohibition, she needed no statutory permission. While she could not assign the contingency created by the policy, she could assign the certainty created by her husband's death, or by the expiration

of the period of endowment. When either of these events occur, the policy becomes "realized personal property," and stands upon the same footing as any other chose in action. There is no foundation for a distinction between a policy which has become payable, with the money ready to pay it, and the proceeds of such a policy when actually paid. Unless both are exempt, neither is exempt. If one is assignable, both are assignable, and all property that can be voluntarily disposed of by the owner, unless exempt by legislative enactment, may be reached by creditors. (*Bolt* v. *Keyhoe,* 30 Hun, 619; 96 N. Y. 646; *Crosby* v. *Stephan,* 32 Hun, 478; *Kratzenstein* v. *Lehman,* 18 Misc. Rep. 590.)

In the absence of a statute expressly exempting a policy after it has become due and payable, it would be narrow and unreasonable to hold it exempt, unless its proceeds are also exempt, and so continue as long as they can be identified. The respondent, both at the trial and upon the argument before us, made the broad claim that the proceeds of the policy, after payment thereof to the wife, are exempt from all legal process issued against her property. What would be the practical effect of such a rule? Policies upon the lives of husbands for the benefit of their wives, the premiums being paid by the husband, are almost universal. Hence, a vast accumulation of property would not only be placed beyond the reach of creditors for the collection of their just claims, but it would also be withdrawn from taxation, as the same rule applies to both subjects. "All property exempt by law from execution," with two exceptions not now important, is also "exempt from taxation" by the express command of the Tax Law. (L. 1896, ch. 908, § 4; L. 1897, ch. 347, § 1.) A man, however heavily indebted he might be, could expend five hundred dollars every year in the purchase of insurance upon his life, either endowment or ordinary, and after it was paid over to his wife, she could hold it not only in defiance of his creditors, but also of her own and of the State itself. The exemption would be purely arbitrary and wholly independent of her necessities, for if she is entitled to it at all, she is enti-

tled to it whether she needs it or not.   Whether with or without children, whether destitute or in affluence, she could claim exemption simply because the subject was money derived from insuring her husband's life.   Insurance money is not like that derived from pensions, which are granted only when the primary recipient is disabled wholly, or in part, by wounds or by disease contracted in the service of his country in time of war.   Moreover, pensions are a bounty paid by government, and do not spring from a fund which may have come from creditors and may be needed for the payment of debts. They are designed to prevent those who have rendered valuable services to the nation from becoming dependent on account of some disability received while rendering such services.   They do not come from creditors either of the husband or the wife, but if the rule contended for is to prevail, even money borrowed to pay premiums and thus to create the insurance fund could not be collected out of it.

If the legislature intended to exempt insurance money, the presumption is that it would have said so expressly, and possibly would have so hedged in the exemption as to limit it to the needy and deserving.   It apparently regarded it as a sufficient protection to exempt policies from the claims of the husband's creditors, without extending the exemption to the creditors of the wife.   At one time it exempted insurance moneys paid by co-operative societies, but it has reversed its policy in that regard and they are no longer exempt.   (*Bull* v. *Case, supra.*) It has never declared that insurance moneys paid by regular insurance corporations should be exempt, and the courts cannot declare them exempt without judicial legislation.   As the money is not exempt after it has been paid to the beneficiary, we do not think it is exempt after it has become due, and we, therefore, reverse the order of the Appellate Division and affirm the judgment rendered by the trial court, with costs.

PARKER, Ch. J., GRAY, BARTLETT and MARTIN, JJ., concur; O'BRIEN and HAIGHT, JJ., not voting.

Ordered accordingly.