### McNABOE v. MARKS et al.

(Supreme Court, Special Term, New York County. June, 1906.)

1. BANKRUPTCY—PROPERTY PASSING TO TRUSTEE—AFTER-ACQUIRED PROPERTY.
The share of a bankrupt in a trust estate is not after-acquired property, though it was decreed to him after the filing of the petition in bankruptcy; the rights of parties in the trust estate being adjudicated by such decree as of a date prior to the filing of such petition.

2. SAME—SURPLUS INCOME OF TRUST ESTATE.
The surplus income of real estate given in trust to the trustees to collect the rents and profits and apply the income to the use and benefit of a person for life cannot be reached by an action at law by the trustee in bankruptcy of the beneficiary, but only by a creditors' action; Real Property Law, Laws 1896, p. 571, c. 547, § 78. declaring the surplus income of such a trust beyond the sum necessary for the education and support of the beneficiary liable to the claims of his creditors "in the same manner as other personal property, which cannot be reached by execution."

Action by James F. McNaboe, trustee in bankruptcy of Morris B. Marks, against Alfred C. Marks and another, executors of and trustees under the will of Esther B. Marks, deceased, and Morris B. Marks. Plaintiff moves to continue preliminary injunction pendente lite. Granted in part.

Black, Olcott, Gruber & Bonynge (Irving L. Ernst, of counsel), for plaintiff.

Baldwin & Blackman (Abel E. Blackman and Frederick S. Fisher, of counsel), for defendant Morris B. Marks.

Messmore Kendall, for defendants Esther B. Marks' Ex'rs.

GIEGERICH, J. This action is brought by the trustee in bankruptcy of the defendant Morris B. Marks for the purpose of compelling the defendant trustees and executors to pay to him the distributive share of said defendant Morris B. Marks in the estate of his mother, Esther B. Marks, deceased. The said defendant Morris B. Marks was adjudged a bankrupt upon his voluntary petition, filed November 17, 1905. By a decree entered in the Surrogate's Court of this county on April 12, 1906, the rights and interests of the bankrupt in the estate of his mother were determined as of January 28, 1905. By that decree it was adjudged that on the date last named the defendant bankrupt was entitled, out of the balance of the personalty and the balance of the income of the trust estate combined, to the sum of about $1,600. This sum of money the defendant trustees have held since that time, and now hold under a temporary injunction, which the plaintiff by this

motion seeks to make permanent. The defendant bankrupt, in opposition to such motion, among other things, contends that the decree of the Surrogate's Court was entered after the filing of the petition, and that, therefore, this property is after-acquired property, and cannot be reached by the trustee in bankruptcy. That this is untenable, at least so far as the personalty is concerned, appears from the fact that the decree relates back and adjudicates the rights of all parties, including the defendant bankrupt, as of the 28th day of January, 1905, 10 months before the filing of the petition, and that decree determined that certain property, which was then in existence, now belongs and then belonged to the defendant bankrupt, so that in no sense can·it be regarded as after-acquired property. A different rule, however, seems to obtain with respect to the balance of the income from the trust estate, which was created by the mother of the bankrupt under the following provision of her will, viz.:

"Third. I direct my trustees to divide my estate into six equal shares, instead of into five shares, as in the sixth paragraph of my will provided. I direct that the first five shares be disposed of as in said sixth paragraph provided. I give and devise the sixth share unto my executors and to their successors in trust, nevertheless, to collect the rents and income thereof and to apply the net income thereof to the use and benefit of my son, Morris B. Marks, during his life. At his death, or at my death, if he shall die in my lifetime, I give the principal of said share to my other descendants in equal shares per stirpes."

The trust so created is an active trust under subdivision 3 of section 76 of the real property law (Laws 1896, p. 571, c. 547). The interest of the beneficiary in such a trust is inalienable. Section 83 (page 572) of the real property law provides: ·

"That the right of the beneficiary of an express trust to receive rents and profits of real property and apply them to the use of any person cannot be transferred by assignment or otherwise, but the right and interest of the beneficiary of any other trust may be transferred."

It is also provided by section 80 of the real property law that the beneficiary shall not take any legal estate or interest in the property, and can only enforce the trust in equity. A portion of the income of the trust estate has already been paid to the defendant bankrupt. Neither the complaint nor any of the papers contains any allegation that the fund sought to be reached is necessary for the support of the defendant bankrupt. Assuming, therefore, for the sake of argument, that the entire fund is surplus income, within the purview of section 78 of the real property law, yet, under the decision in Butler v. Baudouine, 84 App. Div. 215, 82 N. Y. Supp. 773, affirmed without opinion, 177 N. Y. 530, 69 N. E. 1121, the surplus income cannot be reached by a trustee in bankruptcy. Section 78 of the real property law provides:

"Where a trust is created to receive the rents and profits of real property, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum necessary for the education and support of the beneficiary, shall be liable to ·the claims of his creditors in the same manner as other personal property which cannot be reached by execution."

The court, in Butler v. Baudouine, supra, passing upon the last-cited provisions, at pages 218, 219, of 84 App. Div., pages 775, 776, of 82 N. Y. Supp., said:

"The provisions of section 78 of the real property law, making the surplus income of trust property liable to creditors, do not contemplate and do not have the effect of creating a fund in which all creditors are at once or equally interested. The surplus is liable to claims of creditors in the same manner as other personal property which cannot be reached by execution. The provision implies in its very terms and assumes that the surplus cannot be reached by legal process. If this section of the statute constituted the surplus a fund for equal or general distribution among all creditors, another view might prevail, but as a necessary consequence of its phraseology and intent a creditor seeking the benefit of it must put himself in the attitude of one entitled to maintain a creditors' bill, namely, he must have obtained a judgment, liquidated his claim thereby, sought to enforce it by execution, and found that effort abortive by reason of the return of the execution unsatisfied. The section, to some extent, enlarges the rights of creditors and puts within their reach that which otherwise would be inaccessible to them for the satisfaction of their claims, but it is not to be expended by a supposed liberal construction which would simply have the effect of nullifying it. The right is given, and an exclusive method of enforcement of that right is pointed out. In Dittmar v. Gould, 60 App. Div. 94, 69 N. Y. Supp. 708, it was held that the provisions of section 57 of the statute of uses and trusts (1 Rev. St. [1st Ed.] p. 729, pt. 2, c. 1, tit. 2), now section 78 of the real property law, were for the benefit only of creditors who have recovered judgments against the beneficiary, and executions issued thereon have been returned wholly or partially unsatisfied, and it was pointed out that sections 1871–1879 of the Code of Civil Procedure provide the only method by which personal property held in trust, and which cannot be reached by execution, can be applied to the payment of the bankrupt's debts. Hence it is not a provision for creditors at large. It is one solely for judgment creditors. It gives no right to any other person, and in no way confers a power upon the beneficiary to make a disposition of surplus income for the benefit of any of his creditors. If we are right in assuming that the trustee in bankruptcy must claim under the fifth paragraph of subdivision 'a' of the seventieth section of the bankruptcy act, then we are of opinion that the bankrupt had no right or power, prior to the filing of the petition, 'by any means' whatever, to transfer any of this surplus, and it was not property which could have been levied upon and sold under any judicial process against him. It could not be attached and it could not be taken under execution. It would not pass to a receiver in supplementary proceedings, and could only be reached in equity in the manner indicated."

The court, in the same case, further on, says, at page 220 of 84 App. Div., page 777 of 82 N. Y. Supp.:

"It may be within the power and jurisdiction of the bankruptcy court to so control the bankruptcy proceeding as to permit the creditors to enforce their claims under the New York statute."

Plaintiff's counsel, evidently having in mind these words, applied to the District Court of the United States for the Southern District of New York for an order directing the trustee defendants to pay the distributive share to the trustee in bankruptcy, and the said District Court granted a temporary stay against the payment of the sum of money in question to the bankrupt. Upon the hearing the defendant trustees and executors appeared and filed a special appearance and demurrer "to the jurisdiction of the court to deal in a summary proceeding in this matter," and, after due consideration, the court denied the motion, and an order was entered on the 10th day of May, 1906, which, among other things, provided:

"Further ordered that the injunction contained in the said order to show cause, dated April 12, 1906, be, and the same is, in all respects continued until ten days from the date hereof, or if within such time an action is begun to reach said distributive share and a motion made for an injunction thereon, then until such motion is determined."

It is alleged in the moving papers that the trustee, following the said suggestion, began this action to recover the money in suit, "but that the action will avail him nothing unless there is an injunction against the defendant trustees from paying to the defendant bankrupt the distributive share until the determination of this action, for the reason that the defendant Marks is a bankrupt, and his schedules in bankruptcy show that he is without any property, and that the plaintiff will be remediless if this action is not sustained and the money now paid to the bankrupt." It is very much to be deplored that there is no way of reaching the fund in question except by a creditors' action, which, of course, would be of no advantage to the creditors at large of the defendant bankrupt; but this is something which the Legislature alone can remedy.

It is urged by the plaintiff that the case of Butler v. Baudouine, supra, is not controlling, because there, as claimed, the trustees brought an action to reach the surplus of income that was accruing. I do not so understand the facts of that case as I gather them from the opinion of the court, written by Mr. Justice Patterson, but, even if I am mistaken, the reasoning of the court in Parker v. Harrison, 42 N. Y. Super. Ct., at pages 150, 155, is equally conclusive as to both accrued and accruing income. There the court in the course of its opinion said:

"While the income remains in the hands of the trustees, it is applicable solely and exclusively to the purposes of the trust. Its application to such purposes can be enforced in equity by the cestui que trust; it cannot be treated by him or by his creditors otherwise than as subject to the trust. Certainly, until there has been an accounting and settlement between him and the trustee, or some action taken between them, the effect of which is to discharge the trustees from liability as such, to determine the relation of trustee and cestui que trust, and to substitute in its place that merely of debtor and creditor as respects the money sought to be reached, that money cannot be deemed withdrawn from the operation and effect of the trust, and cannot, therefore, be impounded. The trustee cannot discharge himself from the obligation of the trust otherwise than by its performance. The mere fact that he has kept an account of all his dealings with the cestui que trust, and that such account shows a balance in his hands, in no wise relieves him from accountability as trustee, or changes the nature of the title whereby he holds such balance. It is still money held in trust, and is beyond the reach of the creditors of the beneficiary, for whom it is held."

The case of Amberg v. Man. Life Ins. Co., 171 N. Y. 314, 63 N. E. 1111, relied on by the plaintiff's counsel, has no application, because there the insurance money was not exempt after it became due. Lawrence v. Pease (Sup.) 21 N. Y. Supp. 223, also cited by the plaintiff's counsel is no longer controlling, since, as above shown, surplus income would not pass to a receiver in supplementary proceedings.

Kirk v. Worthington, N. Y. Daily Reg. April 29, 1885, is an authority in line with the views expressed in Butler v. Baudouine, supra, for there the direction for the payment of surplus income was made at the instance of the judgment creditor.

It results from these views that the injunction, so far as it affects the defendant bankrupt's share of the personalty, should be continued pendente lite, but that so far as it pertains to the balance of the income of the trust estate it should be denied. I will, however, continue the present injunction in its entirety for a period of 10 days after serv-

ice of notice of entry of the order to be entered hereon, in order to afford the plaintiff trustee in bankruptcy an opportunity to take such further steps or proceedings to reach the surplus income of the defendant bankrupt as he shall be advised. Unless otherwise ordered, the amount of the personalty will be determined upon the settlement of the order. It has been suggested in the briefs of the defendant trustees that the fund in controversy be paid into court. This course may be pursued if counsel will consent thereto.

Motion disposed of as above indicated, with $10 costs to the plaintiff to abide the event.