JOHN L. JACKSON, Plaintiff, *v.* RUBY H. TALLMADGE and HAMPTON H. HALSEY, Defendants.

Supreme Court, Tompkins County, February 2, 1925.

**Trusts — validity — assignment by beneficiary of life insurance policy as collateral for anticipated advances not illegal as to creditors — creation of trust by beneficiary for her own benefit in money collected by assignee on policy is invalid as to creditors under Personal Property Law, § 34 — inclusion of son as beneficiary of trust does not make it valid, where son is amply provided for.**

An assignment by the beneficiary in a life insurance policy of the policy during the lifetime of the insured, as collateral for anticipated advances to be made by the assignee, is not illegal as to the creditors of the beneficiary. However, a trust created by the beneficiary for her own benefit in the money realized from the policy on the death of the insured, collected by the assignee, is invalid as to creditors of the creator of the trust under section 34 of the Personal Property Law.

The inclusion of the son of the creator of the trust as a beneficiary thereof does not make it valid as against the creditors of the creator of the trust, where it appears that the son is amply provided for by other funds.

ACTION by a judgment creditor to have the proceeds of an insurance policy upon the life of the deceased husband of the defendant Tallmadge, now held by the defendant Halsey, adjudged to be the property of the defendant Tallmadge and liable for the satisfaction of the plaintiff's judgment.

*Newman & Newman* [*O. L. McCaskill* of counsel], for the plaintiff.

*Hampton H. Halsey* [*John D. Lynn* of counsel], for the defendants.

HILL, J.:

Plaintiff is a judgment creditor of Ruby H. Tallmadge. The judgment was perfected on October 15, 1923. The defendant Halsey holds certain moneys, the proceeds of life insurance upon the life of the deceased husband of Ruby H. Tallmadge, which proceeds were, by the terms of the policy, payable to the widow. The plaintiff asserts that such moneys should be adjudged the property of the defendant Tallmadge, and liable for the satisfaction of the judgment. The defendants contend that such funds are held

by the defendant Halsey as trustee for the benefit of the defendant Tallmadge and her son Edgar, a boy now twelve or thirteen years of age. The defendants are brother and sister.

The husband died in North Dakota on February 10, 1923. With his family he had resided in that State for several years, and had there conducted a real estate and investing business of considerable magnitude. He was the owner of several thousand acres of land and of many securities of doubtful value. He had been ill for three or four months prior to his death, and during the last ten or fifteen days lay in an extremely critical condition. At the time of his death there were three insurance policies upon his life; the one involved in this litigation of the face value of $25,000 payable to the defendant, his wife. It had been assigned to the company and the proceeds of the loan used to pay premiums. The policy had substantially no cash surrender value. The other two policies were for the benefit of his son Edgar. There was received upon the policy payable to his wife substantially the sum of $22,000, and there was collected upon the two policies of which the son was the beneficiary $22,077. On February 3, 1923, the defendant Tallmadge went to the office of an attorney in the North Dakota village where she lived, and there signed and executed in duplicate an assignment of the policy, absolute in form, to her brother, the defendant Halsey. One copy was filed with the insurance company and the other mailed to the assignee with a letter from the attorney stating in substance that the purpose of the assignment would later be explained to him. Seven days later the insured died. The defendant Tallmadge testifies that for some months before this assignment her husband had been involved in financial difficulties; that when the assignment was made the home in which they lived was about to be sold on mortgage foreclosure; that the only money available for household needs was her own earnings as a school teacher; and also that there were rumors that her husband and possibly herself were to be prosecuted criminally on account of certain business transactions. She testified further that she knew she had signed hundreds of papers at her husband's request and did not know but what she might be involved; that she expected and desired her brother, the defendant Halsey (an attorney), to provide any funds that were necessary for the family expenses and to defend her husband and herself; and that the policy was intended as collateral security to him for these contemplated advancements. She says: " My object in signing that paper was to have my brother placed in such a position he would take care of me in my helplessness * * *. Well I felt I would need financial assistance and I did not like to ask my brother to give it to me

without offering something in exchange for it, so I thought I would offer that life insurance policy as a security for what I would have to ask him to do for me." No communication passed between the two defendants as to the purpose of the assignment until Halsey met his sister when she was coming through to the east with her husband's body for burial. He met her upon the train and she explained to him conditions. She testifies that the husband having died, she said to her brother she wished him to collect the money and to take care of her and " I wanted the rest to go to Edgar." She also says that she told her brother that she wished him to hold the proceeds of the policy for the purpose of defending her in any litigation in North Dakota, and to provide funds for her maintenance and for the maintenance of her son Edgar. Her brother testified that he accepted the trust. The funds now are invested in real estate mortgages payable directly to the defendant Halsey and a portion is in his bank account mingled with his own funds, but he states that all is held under the trust which was created by the assignment and the above conversation.

The insurance policy, prior to the death of the insured, was not subject to the debts of the defendant Tallmadge, and the assignment of it during the life of her husband was not fraudulent as against creditors. (*Eadie* v. *Slimmon,* 26 N. Y. 9; *Barry* v. *Equitable Life Assurance Society,* 59 id. 587; *Smillie* v. *Quinn,* 90 id. 492; *Baron* v. *Brummer,* 100 id. 372; *Frank* v. *Mutual Life Ins. Co.,* 102 id. 266.) Had the funds come into the hands of Ruby H. Tallmadge after the death of her husband, they would not have been exempt property, and a judgment creditor might have resorted to action and have obtained the funds from the insurance company after the death of the insured and prior to their payment to the widow. (*Amberg* v. *Manhattan Life Ins. Co.,* 171 N. Y. 314.) Ruby H. Tallmadge could not transfer personal property to a trustee for the benefit of herself as against existing or subsequent creditors. (Pers. Prop. Law, § 34.)

The assignment contained no provisions indicating the purpose thereof. Resort must be had to the condition of the parties, their mental operations and conversations to determine the real nature of the transaction. On the 3d of February, 1923, when the assignment was executed, no trust was created, there was no corpus to trustee, the necessities of the situation did not suggest a trusteeing looking to the future, the needs were immediate and pressing. The inference and only conclusion to be drawn from the testimony is that this policy was then assigned with the thought that it would be collateral security for loans which of necessity would be asked from the brother and without doubt made by

Mrs. Tallmadge says that when she made the assignment ...pped or expected that her husband would survive. Creditors could not complain of this use of the policy. It was not liable for her debts (*Smillie* v. *Quinn, supra*), and had any advancements been made on this security they would be chargeable against the proceeds. On February 10, 1923, by the death of the husband this was changed. The policy was due, over $20,000 was immediately payable to the widow, only the formalities of filing proofs of loss intervening. Then there existed no need for borrowing or the giving of security. The assignment when it was executed was executory so far as the creating of a trust looking to the future needs of the widow, and became operative only when there was something to trustee and conserve, and this happened when the insured died. The proceeds of the policy at such time were not exempt from creditors of the beneficiary. (*Amberg* v. *Manhattan Life Ins. Co., supra.*) An assignment thereof then as against existing creditors was invalid. She could not create a trust from her own funds for her own benefit as against existing or future creditors because of the Personal Property Law (§ 34). It is claimed that this trust was not solely for the benefit of its creator, but included Edgar. This may be true, but the boy is personally endowed with an estate of $22,000, and the fund which is the subject of this litigation has thus far been paid almost entirely for the benefit of the judgment debtor.

Under what seems to be the settled law of this State, Mrs. Tallmadge could have assigned this policy during the lifetime of her husband, and if she then parted with the benefits thereof creditors would have had no reason to complain. It was exempt property. From her testimony and that of her brother she did not do this. She only contemplated an assignment to secure a person whom she expected would shortly become a creditor for any advancements he might make in money or of services. She hoped, and even expected, that her husband would survive. Had he done so, advancements would have been made, and they would have been a lien upon this exempt property. Her husband died so soon that there was no occasion for advancements; and the policy was free from liens so far as the brother was concerned. Then a different condition obtained. There was a fund, a corpus, and the corpus belonged to her. When she met and talked with her brother, the assignment was mentioned and he was requested to collect the money, care for Mrs. Tallmadge and her son, thus creating a trust primarily for the benefit of its creator, for the son possessed a reasonable estate independent of this trust. The creator of a self-serving trust it would seem could not avoid the inhibition of

the Personal Property Law by including as a beneficiary a *cestui que* who in the ordinary course of events would never require or take of the income.

The condition is not different than as if Mrs. Tallmadge had first drawn an assignment which by its terms stated that the assignment was for the benefit of the proposed creditor as his interest might appear, and when either the loan was paid or the necessity for obtaining the loan had passed, that assignment had been canceled and after the death of her husband a new assignment given, which stated that its purpose was to create a trust. By a naked assignment one might transfer to a financial institution property of value and orally or by letter separate and apart from the assignment state that the purpose was to secure such financial institution for any loans or advancements they might make and then when such loans or advancements were all paid, but the naked assignment still was held, by other instructions or another letter, the purpose of the assignment could be changed so that such property would be held in trust, the one naked assignment serving as an instrumentality to transfer the legal title for whatever changing purpose the assignor might desire.

Strong argument might be advanced that the proceeds of an insurance policy in the hands of a widow should be exempt property. A statute including such class of property in the exempt class might be wise. But an assignment during the lifetime of the insured husband, which remained executory during his life and became operative only after his death, should not be permitted to accomplish this. All money of this character should be treated alike, and this whether or not an assignment looking to and operative in the future has been made. In the case at bar, from a careful reading of the testimony, it seems that when the assignment was made, only the immediate need of funds during the lifetime of the husband was contemplated, and that the assignment was solely collateral security for such expected advancements, the beneficial trust being in mind when there was a fund to trustee. But if the assignment had contained a statement that it was first intended as collateral security for advancements, and that when and if the proceeds of such policy became due by the death of the insured husband, there should first be paid from such proceeds the advancements and that any balance remaining should be a trust fund for the benefit of the widow, then the assignment would be executory only as to the trust fund to be set up and would become operative as to the equity only after the death of the husband and there was a fund to be trusteed. The equity remaining after the payment of the loans made while the policy was exempt would

not be exempt property, if the *Amberg Case* (*supra*) is to be fully followed.

Without determining how much of the trust fund belongs to Mrs. Tallmadge and how much to her son, it is determined that sufficient of the trust fund belongs to Mrs. Tallmadge to pay the judgment in suit.