CANTERBURY, Respondent, vs. NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY, Appellant.

*November 22, 1904—February 21, 1905.*

*Life insurance: Assignability of wife's beneficiary right.*

1. Where a husband procured a policy of insurance on his own life
   for the benefit of his wife, payable on his death to her "or her
   executors, administrators, or assigns," the statutes of this state
   as they existed prior to the enactment of sec. 1, ch. 376, Laws
   of 1891,—substantially as in sec. 2347, R. S. 1878,—did not pre-
   clude the husband and wife together from assigning the policy
   with the consent of the insurance company.
2. Sec. 1, ch. 376, Laws of 1891 (providing that every such policy
   "shall be the sole and separate property" of the wife and shall
   inure to her separate use and benefit and that of her children,
   and, in case of her surviving the term of the policy, the amount
   of the insurance shall be payable to her for her own use and
   benefit, "free from the control, disposition, or claims of her hus-
   band" or his representatives or creditors), assuming it to be
   applicable, as therein provided, to policies issued before its en-
   actment, did not impair the assignability of such policies. A
   declaration in *Ellison v. Straw,* 116 Wis. 207, to the effect that,
   under said act (embodied in sec. 2347, Stats. 1898), a married
   woman had no right to assign her interest in a policy of insur-
   ance on the life of another, is withdrawn.

   MARSHALL and SIEBECKER, JJ., concur as to the assignability
   of policies issued before the act of 1891 and therefore governed
   by the prior law, but are of the opinion that policies for the
   benefit of married women, issued subsequent to and governed
   by the act of 1891, are not assignable.

APPEAL from a judgment of the circuit court for La Crosse
county: J. J. FRUIT, Circuit Judge. *Reversed.*

It appears that the plaintiff's husband, James B. Canter-
bury, died February 14, 1901. This action is brought by the
widow upon three policies of insurance, each constituting the
basis of a separate cause of action. The first cause of action
is based upon policy No. 79,941, dated December 5, 1874,
for $2,000; the second is based upon policy No. 88,933, dated
June 16, 1876, for $2,000; and the third is based upon pol-

icy No. 97,243, dated September 24, 1878, for $3,000; and each cause of action alleges, in effect, that the deceased procured from the defendant the policy of insurance upon his life "for the benefit of *Catherine A. Canterbury,* his wife," in the amount stated therein, for the term of his natural life, and thereby the defendant promised and agreed "to pay the said sum assured, at its office, to the said beneficiary or her executors, administrators, *or assigns,* in sixty days after due notice and proof of death of the said person whose life" was thereby assured; that the defendant waived proofs of death and each and every condition precedent to the bringing of this action by denying that the plaintiff had at the time of her husband's death, or has since had, any insurable interest whatsoever under and by virtue of said policy, and by refusing to pay the amount of the policy, or any part thereof, for the reason of an alleged assignment of the same previous to the death of James B. Canterbury; and claims that there is due on each of such policies the amount therein stated, with interest from April 15, 1901, and prays judgment for $7,000, with interest from April 15, 1901.

The amended answer to the first cause of action, based upon policy No. 79,941, consists of admissions and denials, and then, under the seventh subdivision, consists of: (1) Counter allegations to the effect that July 31, 1896, said James B. Canterbury and said *Catherine A. Canterbury,* for a valuable consideration to them duly paid, duly sold, assigned, transferred, and set over unto the National Bank of La Crosse all their right, title, and interest in and to said policy No. 79,941, and delivered said policy to said bank; that such assignment was in writing and in duplicate, and such duplicate was, on or about said date, sent to the home office of this defendant, and has ever since been and is now in its possession; that said assignment continued in full force and effect down to and at the time said policy was paid by this defendant, as hereinafter set forth; and that at the time said assign-

ment of said policy was so made said James B. Canterbury was indebted to said bank in an amount in excess of the aggregate of said policy No. 79,941, and another policy issued by this defendant, No. 9,256, for $1,000, upon the life of said· James B. Canterbury, payable to his executors, administrators,. or assigns, and also duly assigned to said bank, and that such indebtedness·continued down to and at the time of the death of said James B. Canterbury and at the time of the payment of said policy as hereinafter set forth, and that at all such times said bank had an insurable interest in the life of said James B. Canterbury in excess of the aggregate of said policies. (2) That February 26, 1901, said bank furnished to this defendant due notice and due proofs of the death of said James B. Canterbury, and that therein and thereby said bank expressly claimed, as assignee of such policy, the entire proceeds thereof; and that said bank, at or about said date, also furnished to this defendant due proof of the aforesaid insurable interest of said bank in the life of said James B. Canterbury. (3) That March 16, 1901 (no other claim having been made by any one to said policy No. 79,941 or to the proceeds thereof), this defendant duly paid to said bank, as such assignee, under the proofs so furnished by it as aforesaid, the sum of $2,000 in full of all claims on said policy, and received from said bank its receipt in full therefor, together with the surrender and delivery of said policy to this defendant. (4) That said *Catherine A. Canterbury* never had any child or children. (5) That the plaintiff ought not to question said assignment, or the payment so made by this defendant to said bank, because said plaintiff at all times aforesaid had full knowledge of all the facts aforesaid, including the assignment of said policy, the indebtedness of said James B. Canterbury at that time, and that said policies remained in the possession of said bank, and shortly after the payment of said money to said bank that said bank had furnished to this defendant proofs of death and of its insurable interest, and

that this defendant had paid to said bank said sum of $2,000 and accepted from it the surrender and delivery of said policy; and because said plaintiff never at any time prior to January 27, 1904, made any question or objection thereto, or in any way in respect thereof, but by her silence acquiesced therein and consented thereto; and that prior to January 27, 1904, said plaintiff never in any way or at any time questioned said assignment of said policy, or the claim of said bank, or the payment by this defendant to said bank, as hereinbefore set forth, and prior to said date never made any demand upon this defendant in any way relating to said policy, or gave to this defendant any notice of any claim whatever by her in respect thereof.

The amended answer to the second cause of action, based upon policy No. 88,933, consists of admissions and denials, and under the seventh subdivision thereof consists of: (1) Counter allegations to the effect that October 1, 1892, said James B. Canterbury and said *Catherine A. Canterbury,* for a valuable consideration to them duly paid, duly sold, assigned, transferred, and set over unto the State Bank of La Crosse all their right, title, and interest in and to said policy No. 88,933, and delivered the said policy to said bank; that such assignment was in writing and in duplicate, and such duplicate was, on or about said date, sent to the home office of this defendant, and has ever since been and is now in its possession; and that said assignment continued in full force and effect down to and at the time said policy was paid by this defendant as hereinafter set forth; and that at the time said assignment of said policy was so made as aforesaid said James B. Canterbury was indebted to said bank in an amount in excess of the aggregate of said policy No. 88,933, and another policy issued by this company, No. 97,243, for $3,000, upon the life of said James B. Canterbury, and also duly assigned to said bank; and that such indebtedness continued down to and at the time of the death of said James B. Canter-

bury and at the time of the payment of said policy as herein-
after set forth; and that at all such times said bank had an in-
surable interest in the life of said James B. Canterbury in
excess of the aggregate of said policies. The balance of such
counter allegations, 2, 3, 5, and 6, in answer to that cause of
action, are substantially the same as 2, 3, 4, and 5 in answer
to the first cause of action with this addition: (4) That said
State Bank, of La Crosse, at or about the time of said assign-
ment of said policy to it and at various times thereafter, in
order to protect and to continue said policy in force, was
obliged to and did promptly pay certain of the premiums upon
said policy as the same became due according to the terms
thereof, but the defendant is unable to state when and in what
amounts said premiums were so paid by said bank, except as
aforesaid.

The amended answer to the third cause of action, based
upon policy No. 97,243, consists of admissions and deni-
als, and under the seventh subdivision thereof consists of:
(1) Counter allegations to the effect that October 1, 1892,
said James B. Canterbury and said *Catherine A. Canterbury,*
for a valuable consideration to them duly paid, duly sold, as-
signed, transferred, and set over unto the State Bank of La
Crosse all their right, title, and interest in and to said policy,
and delivered the said policy to said bank; that such assign-
ment was in writing and in duplicate, and such duplicate was,
on or about said date, sent to the home office of this defend-
ant, and has ever since been and is now in its possession; and
that said assignment continued in full force and effect down
to and at the time said policy was paid by this defendant as
hereinafter set forth; and that at the time said assignment
of said policy was so made as aforesaid said James B. Can-
terbury was indebted to said bank in an amount in excess of
the aggregate of said policy No. 97,243 and another policy
issued by this company, No. 88,933, for $2,000, upon the life
of said James B. Canterbury, and also duly assigned to said

bank; and that such indebtedness continued down to and at the time of the death of said James B. Canterbury, and at the time of the payment of said policy as hereinafter set forth; and that at all such times said bank had an insurable interest in the life of said James B. Canterbury in excess of the aggregate of said policies. The balance of such counter allegations, 2, 3, 5, and 6, in answer to that cause of action, are substantially the same as 2, 3, 4, and 5 in answer to the first cause of action, above mentioned, with this addition: (4) That said State Bank of La Crosse, at or about the time of such assignment of said policy to it and at various times thereafter, in order to protect and continue said policy in force, was obliged to and did promptly pay certain of the premiums upon said policy as the same became due according to the terms thereof, but this defendant is unable to state when and in what amounts said premiums were so paid by said bank, except as aforesaid.

The defendant, further answering said complaint and each and all of the several causes of action therein, submits to the court that at all times mentioned in said complaint this defendant and said plaintiff each was, and still is, and the said James B. Canterbury, down to the said time of his death, was, a lawful citizen of the United States and of the state of Wisconsin, and that therefore said defendant and said plaintiff and said James B. Canterbury, and each of them, as such person and citizen under the constitution of the United States and its several amendments, as properly construed, at all times in said complaint mentioned had and enjoyed all the rights and privileges of free persons, and as such citizens, including the right to transfer, assign, and convey any and all their respective right, title, and interest in and to said policies, and each thereof, any statute of the state of Wisconsin or judicial decision of the courts of Wisconsin to the contrary notwithstanding. And this defendant especially sets forth and claims that any denial by any such statute

or judicial decision of the right of the said James B. Canterbury or of the plaintiff, or of both of them, to make the assignment or assignments aforesaid of said policies, or any or either thereof, because of any of the terms of said policies, or either or any thereof, impairs the obligations of said contracts respectively, and brings in question the prohibition contained in sec. 10 of art. I of the constitution of the United States respecting the same; and also abridges the privileges and immunities of said plaintiff and said James B. Canterbury and this defendant, and each thereof, as such citizens as aforesaid, and deprives them and each of them of their and each of their liberty and property without due process of law, and brings in question the prohibition contained in sec. 1 of art. XIV of the amendments to the constitution of the United States in respect thereto as properly construed.

The plaintiff demurred to the separate defense and answer of the defendant to the plaintiff's first, second, and third causes of action, respectively, on the ground that the same on the face thereof does not state facts sufficient to constitute a defense; and the plaintiff also demurred to the separate defense contained in the answer to the whole complaint and to each and all of the several alleged causes of action therein, on the ground that the same on the face thereof does not state facts sufficient to constitute a defense.

The trial court sustained each of said demurrers, and the defendant having in open court elected not to amend its answer, but to stand thereon, it was thereupon ordered that judgment be entered in favor of the plaintiff and against the defendant for $6,062. damages, being the face of said three policies mentioned in the complaint, with interest from January 27, 1904, less premiums paid by the assignees, with interest thereon, together with costs. From the judgment entered thereon accordingly the defendant appeals.

For the appellant there were briefs by *Charles E. Dyer,* attorney, and *F. C. Winkler* and *W. D. Van Dyke,* of coun-

sel, and a separate supplemental brief by *W. D. Van Dyke,* of counsel, and the cause was argued orally by *Mr. Winkler* and *Mr. Van Dyke.*

For the respondent there was a brief by *Winter & Esch,* and oral argument by *Frank Winter*

Cassoday, C. J.  The facts in this case are undisputed. The plaintiff's husband, James B. Canterbury, procured from the defendant three policies of insurance on his own life— one for $2,000, dated December 5, 1874; another for $2,000, dated June 16, 1876; and another for $3,000, dated September 24, 1878—and it was stated in each of said policies, in effect, that it was "for the benefit" of "his wife," the plaintiff in this action, for the amount stated therein, for the term of his natural life, and this defendant therein promised and agreed "to pay the said sum assured, at its office, to the said beneficiary, or her executors, administrators, *or assigns,* in sixty days after due notice and proof of death of the said person whose life" was thereby assured.  As indicated in the foregoing statement, the said James B. and *Catherine A. Canterbury,* on October 1, 1892, for a valuable consideration, sold, assigned, transferred, and set over unto the State Bank of La Crosse all their right, title, and interest in and to both of said policies dated, respectively, June 16, 1876, and September 24, 1878, and delivered the same to the bank.  Such assignment was in writing and in duplicate, and such duplicate was at the time sent to the defendant's home office, and has remained there ever since, and said bank thereupon and repeatedly thereafter paid the premiums upon said policies, respectively, as they became due, to protect its interest therein.  On July 31, 1896, James B. and *Catherine A. Canterbury,* for a valuable consideration, sold, assigned, transferred, and set over unto the National Bank of La Crosse all their right, title, and interest in and to said policy of December 5, 1874, and delivered the same to that bank.  Such as-

signment was in writing and in duplicate, and such duplicate was at the time sent to the defendant's home office, and has remained there ever since, and said bank thereupon and repeatedly thereafter paid the premiums on said last-mentioned policy as they became due, to protect its interest therein.

It is conceded that all three policies were in full force at the time of the death of James B. Canterbury, February 14, 1901; that February 26, 1901, the respective banks holding such policies by such assignments furnished to the defendant due notice and proofs of death of James B. Canterbury, and therein and thereby expressly claimed, as such assignees, the entire proceeds of the policy or policies so held by it; and at the same time furnished to the defendant due proof of such banks' insurable interest in the life of James B. Canterbury; that March 16, 1901, this defendant paid to such banks, respectively, as such assignees, under the proofs so furnished, the full amounts called for by the respective policies, and the defendant then received from each of such banks its receipt in full therefor, together with the surrender and delivery of such policies to this defendant. The plaintiff never objected to nor questioned the validity of either of such assignments or the claims of the respective banks thereunder, or such payments to the banks, respectively, until nearly three years after such payments were made. This action was not commenced until January 31, 1904.

The questions presented concern the validity of such assignments and the effect of the payments made by the defendant to the respective banks on account of the policies and assignments mentioned. The wording of such contracts of insurance is certainly very plain and unambiguous. The controversy is as to the construction of the statutes under which they were made, or which have since been enacted.

1. The first question naturally calling for consideration is as to the meaning and effect of the statutes under which these insurance contracts were made. The difficulty in con-

struing such statutes arises from the fact that there were numerous provisions enacted at different times, and not always consistent, having more or less bearing upon the questions involved. To reach an accurate conclusion, the precise question here presented should be kept in mind. Where, as here, a husband procures a policy of insurance on his own life for the benefit of his wife, payable on his death to her "or her executors, administrators, or assigns," did such statutes preclude, or attempt to preclude, the husband and wife together from assigning the policy with the consent of the company which issued the same? One branch of the legislation had for its object the emancipation of the wife and giving her the power and right to receive, hold, convey, and transfer property the same as though she were unmarried. Such statutes have existed in this state in one form or another for more than fifty years. Ch. 44, Laws of 1850; ch. 95, R. S. 1858; ch. 108, R. S. 1878; and ch. 108, Stats. 1898. It is enough to say here on that subject that such rights and powers of married women, during that period, have gradually been enlarged and broadened. There is no controversy here as to such general rights and powers of married women, and hence there is no necessity of citing any specific provisions of such statutes on that subject. We are here particularly concerned about insurance procured by a husband on his own life for the benefit of his wife. The first enactment in this state on that subject was ch. 158, Laws of 1851, entitled "An act in relation to insurance on lives and for the benefit of married women and other persons." Sec. 1 of that act declared:

"That any policy of insurance made by any insurance company on the life of any person, expressed to be for the benefit of a married woman, whether the same be effected by such married woman or by her husband or by any other person on her behalf, *shall inure to her sole and separate use and benefit and that of her children,* if any, independently of her hus-

band and of his creditors and representatives, and also independently of any other person effecting the same in her behalf, his creditors and representatives."

That is copied almost literally from ch. 82 of the Acts of Massachusetts of 1844, having the same title; the only difference being in the use of the words "such married woman," instead of the word "herself," and inserting the words "sole and" between the words "her" and "separate use." That was followed by a clause not taken from the Massachusetts statute, to the effect that, "in case of the death of the husband" so insured, "such policy and the benefit thereof" should "belong to such married woman," and should "be for her sole use and behoof and that of her children." That statute was continued in force by sec. 5, ch. 95, R. S. 1858, and sec. 5, ch. 95, Tay. Stats. 1871. Ch. 182, Laws of 1862, was an independent act without any repealing clause, and was entitled "An act to secure to married women and others the benefit of insurance on lives," and the first section declared, among other things, that:

"It shall be lawful for any married woman to cause to be insured for her sole use, the life of her husband, her son, or any other person, for any definite period or for the time of the natural life of such husband, son or other persons [person]; and in case of her insuring such husband, son or other person, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to and for the sole use of such married woman, free and exempt from the claims of the representatives of such husband, son or other person, or of their or any of their creditors, respectively."

The balance of the act has no bearing upon the question here being considered. The object of the act was to authorize a married woman to procure insurance on "the life of her husband, her son, or any other person," and to exempt the same from the claims of creditors of such husband, son, or other person. That act was patterned after ch. 80, Laws of New

York of 1840, but which only authorized a married woman "to cause to be insured, for her sole use, the life of her husband, . . . and in case of her surviving her husband the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or of any of his creditors." The portions of that act referred to were expressly repealed by sec. 28, ch. 59, Laws of 1870, entitled "An act to regulate the business of life insurance." Sec. 1 of that act declared that:

"It shall be lawful for any married woman, by herself and in her own name, or in the name of any third person, with his assent as her trustee, to cause to be insured for her sole use, the life of her husband, son or other person for any definite period or for the term of the natural life of such person."

That is quite similar to the first portion of sec. 1, ch. 182, Laws of 1862, above quoted, and the statute of New York mentioned. Then follows a clause authorizing "any person" procuring insurance upon the life of another

"to assign, transfer or cause the same to be made payable to any married woman, . . . whether the person effecting or procuring such insurance or making such assignment or transfer be the husband of such married woman or not, and such policy of insurance, when expressed to be for the benefit of, or assigned, transferred or made payable to, any married woman, *shall inure to her separate use and benefit and that of her children,* and in case of her surviving such period or term, the sum or net amount of the insurance becoming due and payable by the terms of the insurance shall be payable to her, to and for her own use and benefit, free from the claims of her husband, his representatives or creditors, and free from the claims of the person effecting, assigning or transferring such insurance, his representatives or creditors."

These provisions are quite similar to sec. 5, ch. 95, R. S. 1858, and Tay. Stats. 1871, taken in part as they were from the statutes of Massachusetts. The exemption features of the statutes have not been fully pointed out because there is no

right or claim of any creditor here involved. The question here to be determined is the assignability of the policies.

Such are the provisions of the statutes more or less applicable to the case at bar, and which were in force when the policies in question were issued. These policies were all issued prior to November 1, 1878, when the Revised Statutes of that year went into effect. That revision made no substantial change in the statutes in force during the time such policies were issued. On the contrary such revision "condensed" and simplified sec. 19, ch. 59, Laws of 1870, and secs. 5 and 6, ch. 95, R. S. 1858, and Tay. Stats. 1871. Revisers' Notes, sec. 2347, R. S. 1878. Leaving out nonessentials—so far as the present case is concerned—and the new section reads as follows:

"Any married woman may, in her own name, . . . cause to be insured, for her sole use, the life of her husband, son or other person; . . . and any person, whether her husband or not, effecting any insurance of the life of another, may cause the same to be made payable or assign the policy to a married woman; . . . and every such policy, when expressed to be for the benefit of, or assigned or made payable to any married woman, . . . *shall inure to her separate use and benefit and that of her children,* and in case of her surviving the period or term of such policy, the amount of the insurance shall be payable to her or her trustee for her own use and benefit, free from the claims of her husband and of the person effecting or assigning such insurance, and from the claims of their respective representatives and creditors. . . . The amount of any such insurance may be made payable, in case of the death of such married woman before the period at which it becomes due, to her children or to their guardian for their use, if under age, or to any other person, as shall be provided in the policy. . . . The provisions of this section shall apply to all insurance on lives effected before the passage of these statutes." Sec. 2347, R. S. 1878.

It is claimed that under the portion of our statute taken from New York and the prior decisions in that state the policies in question were not assignable. It will be observed that

Canterbury v. Northwestern Mut. Life Ins. Co. 124 Wis. 169.

the New York statute mentioned was enacted while married women in that state were under the common-law disability. It simply made it "lawful for any married woman, by herself and in her name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband," etc.   In the case at bar none of the policies were procured by the wife, but all were procured by the husband on his own life for her benefit.   The act of 1862 and the act of 1870 made it lawful for such married woman to procure such insurance not only upon the life of her husband, as in the New York act, but also on the life of "her son or any other person;" and so the act of 1870 made it lawful for any person to procure insurance upon the life of any person, and "to assign, transfer or cause the same to be made payable to any married woman."   Sec. 2347, R. S. 1878, is to the same effect.   So the New York act only provided that such insurance, so procured by a married woman, should "be payable to her, to and for her *own use,* free from the claims of" her husband's representatives and creditors, "in case of her surviving her husband."   The act of 1870 declared that such insurance, assigned or made payable to a married woman, whether effected by her husband or some other person, should "inure to her separate use and benefit and that of her children."   The words quoted are taken from the Massachusetts act, and are found in ch. 158, Laws of 1851; sec. 5, ch. 95, R. S. 1858, and Tay. Stats. 1871; and sec. 2347, R. S. 1878.   It is true that in the New York case relied upon the wife obtained a policy of insurance on the life of her husband under the act mentioned, and she survived her husband; and it was held by a divided court that such policy was not transferable so as to divest the interest of the wife or her children.   *Eadie v. Slimmon,* 26 N. Y. 9, 15, 17.   Denio, C. J., concurring, there said that the act mentioned "was an enabling, and not a declaratory, provision;" in other words, and to the extent therein mentioned, it

removed the common-law disability of the wife.   In a subsequent case in the same court it was said that:

"We are not called upon to vindicate the doctrine of *Eadie v. Slimmon*.   The inference of a legislative intent to make a policy *procured by a wife* on the husband's life unassignable, deduced *by the court* in that case, has sometimes been thought to rest on a slender foundation; but the case has been repeatedly followed.   [Citing cases.]   The legislature, in conferring by subsequent acts a limited power of assignment, have recognized the policy attributed to the legislation of 1840."   *Brummer v. Cohn,* 86 N. Y. 11, 17.

In a later case in that state, speaking of *Eadie v. Slimmon,* it was said that:

"In that case and in all the cases following it the policy was either procured by the husband upon his life, and payable to the wife, or taken out by the wife and payable to herself. [Citing cases.]   Since the inference of a legislative intent to make nonassignable a policy of insurance upon the life of a husband for the use or benefit of a wife, issued prior to the passage of the act of 1879, rests *wholly upon judicial construction,* and not upon the express terms of the statute of 1840, it should not, at this late day, be further extended by construction."   *Dannhauser v. Wallenstein,* 169 N. Y. 199, 211, 212, 62 N. E. 160.

In a still later case in the same court it was held that:

"Money due upon a matured insurance policy, written by an ordinary life insurance company upon the life of a husband, payable to his wife, is subject to levy under a warrant of attachment issued against the property of the wife in an action brought to recover a debt owing by her."   *Amberg v. Manhattan L. Ins. Co.* 171 N. Y. 314, 316, 317, 63 N. E. 1111.

It was there said that:

"While we have held that such a policy cannot be seized by the creditors either of the husband or the wife before it has become due and payable, we have not held that it is exempt from the claims of her creditors after the contingent promise has ripened into an actual promise and the right of the bene-

ficiary has become absolute. . . . The reason for holding that the policy is practically exempt until it becomes due is that the wife could not assign it until it matured, because 'it would be against the spirit and policy of the statute to allow such a policy to be assigned by a wife during the lifetime of her husband,' or before the maturity of the policy."

In view of the differences pointed out between the New York act of 1840 and our own statute, and in view of the more recent utterances of the highest court of that state on the subject, the decision in *Eadie v. Slimmon,* 26 N. Y. 9, cannot be regarded as persuasive authority for holding that under our statutes the policies in question were not assignable.

There is no claim here that any court has ever decided that the statute of Massachusetts made such policies nonassignable. On the contrary, the courts of Massachusetts have declared them to be assignable. Thus, a husband procured two policies of insurance on his own life "for the use of his wife, Mary D., and his children alive at his decease," and subsequently he and his wife assigned to one S. "all their title and interest in the policies, and all advantages to be derived therefrom," and thereafter S., at their request, assigned and delivered the same to the plaintiff, who thereafter paid the annual premiums and assessments thereon; each of such assignments was made to secure the repayment of money borrowed by the husband; the wife died before the husband, and then he died, leaving their child surviving; and it was held that the plaintiff, as such assignee, could maintain an action at law against the company on the policies, which, in the language of the act, were "expressed to be for the benefit of a married woman." *Burroughs v. State M. L. A. Co.* 97 Mass. 359. See, also, *Norris v. Mass. M. L. Ins. Co.* 131 Mass. 294; *Troy v. Sargent,* 132 Mass. 408; *Boyden v. Mass. M. L. Ins. Co.* 153 Mass. 544, 546, 27 N. E. 669. In this last case the assignment by the wife and children to the husband was held valid. In *Newcomb v. Mut. L. Ins. Co.* 18 Fed. Cas.

No. 10,147 (p. 47), a husband procured insurance on his own life for his own benefit, and then assigned it to his wife, and she assigned it to the plaintiff as security for a loan to the husband, and the federal court of Massachusetts held that the assignment was valid; and it was there said, in effect, that under the statute of that state the husband and wife together could transfer the wife's separate property therein as security for his debts or for any other lawful consideration. So where, in that state, a husband, in the name of his wife, procured insurance upon his own life for the benefit of his wife "for her sole use, if living, and, if not living, to her children," and the wife died first, leaving children, who died before the husband, it was held, in effect, that such insurance passed to the estate of the children. *Millard v. Brayton,* 177 Mass. 533, 59 N. E. 436. To the same effect, *Swan v. Snow,* 11 Allen, 224. In the case at bar it is conceded that the plaintiff never had any children nor child.

Such is the import and effect of the statute of Massachusetts of 1844 which was adopted in this state almost literally in 1851, and, as indicated, was continued in substantially the same form at least down to the revision of 1878. Certainly, the words "expressed to be for the benefit of a married woman," and the words "shall inure to her separate use and benefit and that of her children," found in the Massachusetts act, are also, with the words "sole and" inserted before the word "separate," found in the Revised Statutes of 1858 and Taylor's Statutes of 1871. The phraseology is slightly changed in the act of 1870, but the substance is preserved, as follows: ·

"Such policy of insurance, when expressed to be for the benefit of, or assigned, transferred or made payable to any married woman, shall inure to her separate use and benefit, and that of her children."

The same provision with the word "transferred" dropped out and the words "or any such trustee" inserted was con-

tinued in the revision of 1878 and also in the revision of 1898 (sec. 2347).

The first case in this court having any bearing upon the question here presented is *Kerman v. Howard,* 23 Wis. 108. In that case the husband procured an insurance on his own life, payable to his wife, "Ellen Hill, or her legal representatives." The husband had no child by Ellen, but had two daughters by a former wife, and the plaintiff was the daughter of Ellen by a former husband. The husband and wife were both injured by an explosion, from which they both died; the wife a few hours prior to the husband. After the death of the wife, the husband, without knowing that she was dead, made his will, giving the insurance to the three children "in equal parts," provided that his wife did not live, but that, if she did live, then it was to go to her. This court affirmed the judgment of the trial court disposing of the insurance according to the will, and held that:

"Where a husband survives his wife, having previously procured a policy of insurance on his own life for her benefit, and himself paid the premiums thereon, he may dispose of it by will or otherwise."

In that case this court commented at some length upon the case of *Eadie v. Slimmon,* 26 N. Y. 9, and concluded by saying that it could not "be regarded as controlling authority."

In *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542, 545, 546, the husband procured from the defendant an insurance on his life of $3,000, payable to his wife. The husband died, and thereupon the wife commenced the action against the company. The company defended on the ground that the plaintiff was not the owner of the policy; that a short time before the husband's death he and his wife had, by an instrument in writing, assigned the policy to the persons therein named, to save them harmless from any indorsement and liabilities incurred by them for the assured; and it was said in the opinion, and this court held, that the husband and wife owned the

whole interest in the policy, and, having joined in making the assignment, the same was valid; that "there is nothing in our law which prohibits a married woman from making such an assignment;" and that "a life policy is on the same footing in these respects as other choses in action which are assignable in equity." That case has never been questioned by this court. On the contrary, it has frequently been cited with approval. *Ballou v. Gile*, 50 Wis. 614, 619, 7 N. W. 561; *Bursinger v. Bank of Watertown*, 67 Wis. 75, 81, 82, 30 N. W. 290; *Estate of Breitung*, 78 Wis. 33, 35, 46 N. W. 891, 47 N. W. 17. The case of *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542, has also been repeatedly recognized as a sound adjudication in other jurisdictions. *Metropolitan L. Ins. Co. v. O'Brien*, 92 Mich. 584, 589, 52 N. W. 1012; *Amick v. Butler*, 111 Ind. 578, 582, 583, 12 N. E. 518, 520; *Davis v. Brown*, 159 Ind. 644, 647, 65 N. E. 908; *Binkley v. Jarvis*, 102 Ill. App. 59, 64; *Newcomb v. Mut. L. Ins. Co.* 18 Fed. Cas. No. 10,147 (p. 47). In this last case, United States Circuit Judge Lowell cited the *Archibald Case*, among others, to the proposition that:

"The courts of all the states which have passed upon this question, under statutes more or less like ours, excepting the court of appeals of New York, have held that the married woman has the full domain over the policy, and may sell, assign, or pledge it like her other separate property."

It is there further said that "the decisions in *Eadie v. Slimmon*, 26 N. Y. 9, and *Barry v. Equitable L. A. Soc.* 59 N. Y. 587, are placed upon reasoning which does not apply to our statute." So, in an opinion by Mr. Justice Field, speaking for the supreme court of the United States, the *Archibald Case* is cited to the general proposition that:

"A policy of life insurance without restrictive words is assignable by the assured for a valuable consideration, equally with any other chose in action, where the assignment is not made to cover a mere speculative risk and thus evade the law

against wager policies; and payment thereof may be enforced for the benefit of the assignee, and, under the system of procedure in many states, in his name." *New York M. L. Ins. Co. v. Armstrong,* 117 U. S. 591, 597, 598, 6 Sup. Ct. 877.

Such was the law at the time the policies in question were issued, as declared by this court in the *Archibald Case.* True, one of those policies had been issued before that decision was announced. But that decision was no new announcement or departure from any established rule of law. On the contrary, the opinion declares the decision to be in accordance with "the settled law of this state." As already indicated, prior to that decision, and prior to any of the policies in question being issued, this court had expressly repudiated the decision of *Eadie v. Slimmon,* 26 N. Y. 9, holding "that a policy of insurance on the life of the husband for the benefit of the wife and children" was not transferable, "so as to divest the interest of the wife," and held that the husband had power to transfer such policy by will, even after the death of his wife, who had left a daughter her surviving. *Kerman v. Howard,* 23 Wis. 108. That decision carried the doctrine of assignability of such policies much beyond the decision in the *Archibald Case,* which, as indicated, merely held that the husband and wife together "owned the whole interest in the policy," and hence could transfer the same by joining in an assignment thereof. So the decision in *Kerman v. Howard* went beyond the decisions in the Massachusetts cases cited, for the same reason. But the decision in *Kerman v. Howard* has never been overruled by this court, and has frequently been followed or cited with approval, with an occasional dissent from the writer. *Foster v. Gile,* 50 Wis. 603, 7 N. W. 555, 8 N. W. 217; *Ballou v. Gile,* 50 Wis. 614, 7 N. W. 561; *Bursinger v. Bank of Watertown,* 67 Wis. 75, 81, 30 N. W. 290; *Given v. Wis. O. F. M. L. Ins. Co.* 71 Wis. 547, 552, 37 N. W. 817; *Estate of Breilung,* 78 Wis. 33, 35, 46 N. W. 891, 47 N. W. 17; *Strike v. Wis. O. F. M. L. Ins. Co.* 95

Wis. 583, 587, 70 N. W. 819; *Berg v. Damkoehler,* 112 Wis. 587, 590, 88 N. W. 606. The general purpose of the court has been to steadily adhere to the decision in *Kerman v. Howard* until the same should be changed by statute. It follows from what has been said that the policies in question were assignable at the times they were respectively issued.

2. The question recurs whether such assignability was destroyed or impaired by subsequent legislation. It has already been shown that the statutes on the subject in force at the times of issuing such policies were substantially the same as are found in the Revised Statutes of 1878 (sec. 2347). That section was amended in 1889 by striking the word "of" out from the words "effecting any insurance *of* the life of another," and inserting in lieu thereof the words "on his own life or on." Sec. 1, ch. 271, Laws of 1889. This broadened the scope of the language, but did not impair, nor attempt to impair, the assignability of the policy. That section was again amended in 1891 by inserting the words included in parentheses contained in the following portion of the section:

"Every such policy when expressed to be for the benefit of or assigned or made 'payable to any married woman or any such trustee, (shall be the sole and separate property of such married woman, and) shall inure to her separate use and benefit and that of her children, and in case of her surviving the period or term of such policy, the amount of the insurance shall be payable to her or her trustee for her own use and benefit, free from the (control, disposition or) claims of her husband and of the person effecting or assigning such insurance, and from the claims of their respective representatives and creditors." Sec. 1, ch. 376, Laws of 1891.

Undoubtedly, as indicated in the opinion of my brother Marshall, in *Ellison v. Straw,* 116 Wis. 207, 92 N. W. 1094, the purpose of that amendment was to radically change the judicial rule announced by this court in *Clark v. Durand,* 12 Wis. 223, and *Kerman v. Howard,* 23 Wis. 108, and other cases following those decisions, to the effect "that the mere

beneficiary named in a policy of insurance had no rights what-
ever which the assured was bound to respect." That amend-
ment expressly enlarged the rights of the wife by declaring
that every such policy "shall be the sole and separate prop-
erty of such married woman," free from the "control, dis-
position or" claims of her husband or any other person. It
thereby expressly took from the husband or other person pro-
curing such insurance for her benefit all right of control over
and disposition of such policy, as previously held by this
court. But that amendment, properly construed, did not im-
pair nor attempt to impair, much less destroy, the assigna-
bility of such insurance contract. The fact that it declares
that such policy "shall be the sole and separate property of
such married woman" does not imply that she has no power
to assign the same with the consent of the company from
which it issued. Nor can it be properly claimed that such
insurance contract is made nonassignable by reason of the
words thus injected into the section by the amendment being
followed by the words, "shall inure to her separate use and
benefit and that of her children," since, as already shown,
those words were taken from the statute of Massachusetts and
have been in force in this state as a part of the statute in ques-
tion ever since the act of 1851 mentioned. They were there-
fore in force when this court held such policies to be assign-
able in *Kerman v. Howard* and the *Archibald Case* and the
other cases following those decisions. By a well-established
rule of law, which in this state has long been statutory, the
effect of an amendment to a section of the statutes otherwise
continued is merely to leave the section so amended as it was
before, with the added feature. Sec. 4985, Stats. 1898; *Mad-
den v. Kinney,* 116 Wis. 561, 568, 93 N. W. 535; *Danforth
v. Oshkosh,* 119 Wis. 262, 309, 97 N. W. 258. Ever since
the act of 1870 the section of the statutes in question con-
tained a clause which expressly declares that "the amount of
any such insurance may be made payable, in case of the death

of such married woman before the period at which it becomes due, to her children or to their guardian for their use, if under age, or to any other person as shall be provided in the policy." Sec. 2347, Stats. 1898. The language of the act of 1870 was slightly different, but it was substantially the same as indicated above. That clause expressly authorized the assured, in case he survived such married woman, to provide in the policy to whom the same should be payable; and, in case he failed to do so, then it was to be payable to her children or their guardian. *Ellison v. Straw,* 116 Wis. 207, 214, 92 N. W. 1094. That clause expressly gave to such married woman at least a contingent interest in the policy during the life of the assured and while the same was not otherwise disposed of by him. In the case at bar the plaintiff survived her husband and never had any children nor child, so that clause of the section is not here applicable.

But, as already indicated, there was a clause in the act of 1870 to the effect that, in case such married woman named as beneficiary in such policy should survive the "period or term" therein expressed, "the sum or net amount of the insurance becoming due and payable by the terms of the insurance" should "be payable to her, to and for her own use and benefit, free from the claims of her husband, his representatives or creditors, and free from the claims of the person effecting, assigning or transferring such insurance, his representatives or creditors." Such was the language of the clause when the policies in question were issued. As indicated, the same was condensed and continued in sec. 2347, R. S. 1878, and, as amended, in the Statutes of 1898, wherein it is declared, in effect, that in case such married woman survived "the period or term of such policy, the amount of the insurance" should "be payable to her or her trustee for her own use and benefit," etc. The fact that such insurance was to be so paid to her or for her use and benefit, in case she so survived, but, in case she did not so survive, then to be paid "to her children, or to

their guardian, . . . or to any other person" who might be "provided" for "in the policy," is a pretty clear indication that the legislature only intended to prescribe where the insurance money should otherwise go in case the married woman did not so survive. In other words, in case she so survived, then the insurance money was to be paid "to her or her trustee for her own use and benefit," regardless of the question whether she had children or not. As held in Massachusetts, "if a policy of insurance is expressed to be for the benefit of the wife of the assured, her children have no interest in it during her lifetime." *Norris v. Mass: M. L. Ins. Co.* 131 Mass. 294; *Troy v. Sargent,* 132 Mass. 408.

Such were the provisions of the statutes applicable when this court held that, as the assured and his wife owned the whole interest in such policy, they could together transfer the same by assignment with the consent of the company. *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542, 546. The assignments of the policies in question by the plaintiff and her husband were not made until after the amendment of 1891. That amendment in terms applied "to all insurance on lives effected before" its enactment. Assuming it to be applicable to the policies in question, yet it nowhere attempted to take away from such married woman any interest she had in any such policy. On the contrary, it purported to enlarge her right, title, and interest therein by expressly declaring that such policy should be her "sole and separate property," free from the "control" or "disposition" of her husband or other person procuring the same. The language employed indicates absolute ownership. That amendment placed a married woman, named as beneficiary in such life insurance policy, upon an equal footing with a single female or a man, as previously held in other jurisdictions. Thus, in an English case, where a man procured insurance on his own life in the name of his daughter, and retained the policy in his own possession, and paid all the premiums thereon, it was held to be a complete

gift to the daughter, and that upon the death of her father
she was entitled to the insurance money. *Weston v. Richard-
son,* 47 L. T. Rep. 514. So it has been held by the supreme
court of the United States to be a general rule that a life in-
surance policy, and the money to become due under it, belong,
the moment it is issued, to the person named therein as bene-
ficiary. *Central Bank v. Hume,* 128 U. S. 195, 9 Sup. Ct.
41. To the same effect: *Glanz v. Gloeckler,* 104 Ill. 573;
*Wilburn v. Wilburn,* 83 Ind. 55; *Laudenschlager v. N. W.
E. & L. Asso.* 36 Minn. 131, 30 N. W. 447; *Robinson v. Du-
vall,* 79 Ky. 83; *City Sav. Bank v. Whittle,* 63 N. H. 587,
3 Atl. 645. Such absolute ownership, with no disability, car-
ried with it by necessary implication the constitutional right
to assign and dispose of such policy. See *New York M. L.
Ins. Co. v. Armstrong,* 117 U. S. 591, 6 Sup. Ct. 877, and
other cases cited above; *Planters' Bank v. Sharp,* 6 How.
301; *Pearsall v. G. N. R. Co.* 161 U. S. 646, 663, 664, 16
Sup. Ct. 705; *People v. Otis,* 90 N. Y. 48. Thus it has been
held by this court that stock in a private corporation is per-
sonal property, and that the owner thereof has the right to
transfer the same in the manner prescribed by statute, not-
withstanding a by-law of the corporation to the contrary.
Such by-law was therein held to be void, as against public
policy. *In re Klaus,* 67 Wis. 401, 404, 405, 29 N. W. 582;
*Edgerton T. M. Co. v. Croft,* 69 Wis. 256, 259, 34 N. W. 143.

The bringing of this action was doubtless induced by what
was recently said by this court in *Ellison v. Straw,* 116 Wis.
207, 92 N. W. 1094; and if we adhere to all that was said in
that case, as distinguished from what was presented and nec-
essarily decided, then it was justified. That case did not in-
volve the voluntary assignment of any policy of insurance.
Several of the statutes and decisions bearing upon that ques-
tion were not there brought to our attention nor considered.
The question there presented and decided was whether the
interest of a married woman in an insurance policy on her

husband's life was, during his life, exempt from her debts.
That question was new in Wisconsin, for, prior to 1891, her
interest, being subject to transfer or destruction at the will of
her husband, was of so uncertain value as not to attract at-
tempts by creditors to reach it.    With no opposing adjudica-
tions in this state on that question, we reached the conclusion
and decided that the various provisions in our statutes indi-
cated a purpose to provide for the widow and her children;
and that such liability to her creditors was so inconsistent
with such purpose that we were forced to believe that the leg-
islature intended that her interest in such insurance policy,
even though her sole and separate property, was nevertheless
exempt from the reach of creditors.    That question is not here
involved, but we have no disposition or purpose to indicate
that if it were we should hesitate to adhere to that decision.
The case of *Ellison v. Straw,* however, went further, and de-
clared that the same provisions of our statute indicated a pur-
pose to prohibit the assignability of such a policy by a mar-
ried woman.    That view was largely based upon the assumed
identity of our statute with that of New York, and upon
*Eadie v. Slimmon* and like cases.    If the question here pre-
sented were an original one, like that of the exemption, we
might feel bound by the decision in *Ellison v. Straw.*    But
our attention is now called to the fact that our statute was
mostly taken from Massachusetts, and that the doctrine of
*Eadie v. Slimmon* had long before been repudiated by this
court, and that the assignability of such policies had been re-
peatedly decided under statutes containing the same provis-
ions as at present, except only the new words incorporated by
the act of 1891.    We cannot doubt that these decisions of
our own court are of such age and character as to entitle them
to full *recognition* under the rule *stare decisis.*    They mani-
festly had become a rule of property on which the defendant
relied in paying these policies.    A stronger case to justify
such reliance could not well be presented.    After full consid-

eration, we do not feel justified in departing from the decisions referred to, and so we are constrained to withdraw the declaration in *Ellison v. Straw, supra,* to the effect that a married woman has no right to assign her interest in a policy of insurance on the life of another. We must hold that all right, title, and interest in the policies in question were transferred by the assignments mentioned to the respective banks, and that the same were paid and satisfied by this defendant long prior to the commencement of this action.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the action.

MARSHALL, J. (*dissenting in part*). I concur in the result reached but not in all the reasons assigned therefor. The policies were issued before the act of 1891 and are governed by the prior law, permitting the assured in such cases to deal with the policy regardless of the beneficiary. The legislature could not change existing contracts. That was not suggested in *Ellison v. Straw,* 116 Wis. 207, 214, 92 N. W. 1094. It is sufficient for this case, regardless of the beneficiary having joined with her husband in the assignments.

I regret that the decision is not rested on that which we all agree to, instead of covering, unnecessarily, a field where we are so divided that, in view of the addition to our number about to occur when the case was submitted and the further addition to occur soon, the conclusion reached settles the law only for the one case. I disagree so radically with some features of the opinion and regard the reasoning therein so infirm, as to bearing careful analysis, and the conclusion so contrary to the letter and spirit of our statute and the thought that dominates, as a rule, in taking insurance for the benefit of the family, that it seems best to state at some length the grounds therefor.

We cannot believe that—while, since *Clark v. Durand,* 12

Wis. 223, until 1891, the beneficiary in a policy of life insurance had been regarded as not having any interest, except contingent upon the policy maturing without the assured doing anything inconsistent therewith,—the legislature, by a statute, in its letter providing that· such a beneficiary shall be deemed to be the owner of the policy and at its maturity, she then surviving, the proceeds shall be paid to her for her benefit, voicing the natural wish of a husband to extend protecting care over the wife beyond the period of possible personal attention thereto,—intended that the policy from the first should be a mere chose in action in the wife's hands, subject to the dangers incident thereto, of the purpose of the insurance being defeated during the lifetime of the husband. Such should not be declared the purpose of the legislature if that can reasonably be avoided. The assertion of counsel that married women are not properly the subject of special legislative care, that they· should enjoy the same liberty as to property as is afforded to others, sounds well, but in practical life it is found that such liberty has its natural and necessary limitations. Mere theory should not move one efficiently as regards disturbing a legislative policy enabling one to assure protection to his wife after his ability to personally see thereto shall have ceased and to put the guaranty beyond her power and his to defeat it.

From the time this court first dealt with the subject under discussion till *Ellison v. Straw, supra,* though our law had some of the features of the law of Massachusetts, it was held, without exception, that a beneficiary had no right which the assured could not defeat before the maturity of the policy, whereas in Massachusetts a beneficiary, upon the issuance of a policy, became the absolute owner of it with perfect freedom of action in respect thereto. That doctrine which has never before found favor here, though repeatedly presented therefor, has now been adopted because of the act of 1891, which, to my mind, it seems, was designed to assure to the

beneficiary, she being a married woman, the indefeasible right to the policy benefits contingent only upon her living out the policy period.

The similarity of sec. 2347, Stats. 1898, to the law of Massachusetts supposed to exist, and to which controlling significance is given, we think will be seen to be a mere shadow. But if we were to concede the premise assumed, the reasoning based thereon would fail from the facts, not suggested in the court's opinion, that the supposed parent statute was not construed before its adoption here, and from the first till now our court has refused to follow the Massachusetts doctrine. It is indorsed now in part only.   The suggestion is made that the court would not hold to what would seem to be the effect of the step taken, if the case depended on that, but would adhere to *Ellison v. Straw*.   Thus is established, partly the doctrine of Massachusetts, partly that of New York, and partly that declared here prior to 1891.

It seems to me that one would infer from the court's reasoning that it has heretofore been quite in harmony with Massachusetts instead of with New York, while prior to *Ellison v. Straw* it was not in harmony with either, nor with courts elsewhere on the subject under discussion.   How does it profit us on the question of assignability by a married woman of a policy made payable to her, to show that both courts have uniformly held that such a policy is assignable, when the ruling in one has been upon an entirely different ground from that in the other?   One that the consent of the beneficiary is entirely immaterial, the assured being in absolute control, and the other that consent of the assured is immaterial, the beneficiary being in absolute control.   Is it not a clear mistake of reasoning to speak of similarity of our statutes to that of Massachusetts when *Kerman v. Howard,* 23 Wis. 108, was decided, as important, and harmony of our decisions thereafter till *Ellison v. Straw,* or to class them with *Troy v. Sargent,* 132 Mass. 408; *Gould v. Emerson,* 99 Mass. 154, 97 Am.

Dec. 720; *Unity M. L. A. Asso. v. Dugan,* 118 Mass. 219, when the former were grounded on the idea that the beneficiary had practically no interest in the policy, except contingent upon the assured before its maturity not doing anything inconsistent therewith, and the latter on the idea that the beneficiary, though a married woman, is the absolute owner of the policy and may deal with it as she likes, subject to the provisions thereof, which may defeat it altogether?

It seems to be supposed that in *Archibald v. Mut. L. Ins. Co.* 38 Wis. 542, the court held that the married woman beneficiary could assign her interest; that nothing inconsistent therewith appears in our decisions till *Ellison v. Straw;* that it has been many times approved elsewhere, and that in *Ellison v. Straw* that was overlooked. That case was ruled necessarily by the rule of *Kerman v. Howard* that the assured may dispose of an insurance policy regardless of the wishes of the beneficiary, since the latter's interest is wholly contingent and under the assured's control. True, it is said in the opinion "there is nothing in our law which prohibits a married woman from making such an assignment," referring plainly to her beneficiary interest, which was something or nothing according to the will of her husband. It was merely suggested that such right as she had she could assign, since she was emancipated from common-law disabilities and there was no law prohibiting the assignment. We look in vain in the decisions for indorsement of the Massachusetts doctrine. The wife joined with the husband in the assignment. Without her act the effect would have been the same. *Kerman v. Howard* was followed. That was all. In the opening lines the court said:

"That it is competent for the owner of a life policy to assign the same so that the assignee may maintain an action thereon in his own name, is the settled law of this state, and it is quite immaterial that a married woman is beneficially interested in the policy."

We cannot think the court intended by the added language, entirely immaterial to the case, to suggest ownership by the beneficiary of the policy, or right to transfer it. True, such interest as the wife had, there was no law to prohibit her from assigning. But she had no real interest as it was then understood. The case did not turn on what she did in the slightest particular. True, the court said the husband and wife owned the whole interest in the policy, and having joined in making the assignment the same was valid, but the sole question was whether the act of the husband carried the whole interest in harmony with the previous decisions of this court.

It is said that the *Archibald Case* was never questioned in this court, but has frequently been cited with approval, referring to *Ballou v. Gile,* 50 Wis. 614, 619, 7 N. W. 561; *Bursinger v. Bank of Watertown,* 67 Wis. 75, 78, 82, 30 N. W. 290; *Estate of Breitung,* 78 Wis. 33, 35, 46 N. W. 891, 47 N. W. 17. True, those cases refer to the *Archibald Case,* but a careful reading of them fails to disclose the remotest suggestion of a reference for any purpose other than to show that the assured may assign his policy without the consent of the beneficiary, and thereby defeat the latter's interest. In the last case COLE, C. J., stated the question ruled by the *Archibald Case* thus:

"Can a person who has procured a policy of life insurance on his own life for the benefit of another, and has paid the premiums thereon as they became due, dispose of the insurance money by will to the exclusion of the beneficiary named in the policy, during the lifetime of such beneficiary?"

We fail to see how that case throws any light whatever on the proposition now at issue.

My brethren further say the *Archibald Case* has been cited with approval in various jurisdictions, suggesting such use to support the proposition that a married woman beneficiary may assign the policy. We appreciate that the broad proposition is unnecessary to this case, but the logical effect of my breth-

ren's reasoning goes to the limits of it. It goes to the extent of holding that a wife, without the consent of the husband, may sell the policy before it matures, and that it may be taken for her debts as held in Massachusetts, in *Troy v. Sargent, supra,* cited in the opinion. It is largely to call attention to the far-reaching scope of the reasoning of my brethren that I write this opinion.

The decisions elsewhere given as supporting the views of the *Archibald Case* now taken by my brethren are: (1) *Metropolitan L. Ins. Co. v. O'Brien,* 92 Mich. 584, 589, 52 N. W. 1012; (2) *Amick v. Butler,* 111 Ind. 578, 582, 583, 12 N. E. 518; (3) *Davis v. Brown,* 159 Ind. 644, 647, 65 N. E. 908; (4) *Binkley v. Jarvis,* 102 Ill. App. 59, 64; (5) *Newcomb v. Mut. L. Ins. Co.* 18 Fed. Cas. No. 10,147 (p. 47); (6) *New York M. L. Ins. Co. v. Armstrong,* 117 U. S. 591, 597, 598, 6 Sup. Ct. 877. In 1 the *Archibald Case* is cited solely to the proposition that the assured may assign the policy to secure a creditor. In 2, 3, 4, and 6 it is cited to the proposition that the assured may assign the policy as he may assign any chose in action. In 5 it is cited to the proposition that "this and most courts hold to the doctrine that a married woman who is the beneficiary in an insurance policy has the full dominion over it, and may sell, assign, or pledge it like her other separate property." In neither 1, 2, 3, 4, nor 6 was the right of the beneficiary involved at all. The use of the case was only legitimate to the point that a policy of life insurance is assignable by the assured. In 5 a manifestly illegitimate use was made of the case, because it was not even remotely hinted by this court that a beneficiary has the dominion over the policy.

Some general statements in the opinion of the court as to the bearing of the *Archibald Case* with *Kerman v. Howard,* and the bearing of the two with the Massachusetts cases, to my mind are liable to mislead. It is said that *Kerman v. Howard* went further than the *Archibald Case;* that whereas

the former is to the effect that the assignee, regardless of his wife, may transfer the whole interest in the policy, in the latter it is said "the husband and wife together owned the whole interest in the policy and hence could transfer the same by joining in an assignment thereof." If one can see in the *Archibald Case* that the policy there involved passed by assignment *because* the assured and the beneficiary joined in the assignment, and see even a remote suggestion that the beneficiary possessed any interest not extinguished by the assignment by the husband regardless of her conduct, the case furnishes some support for the use made of it. But how can we square the court's view with the plain language of Justice LYON, which we have already quoted, saying that the act of the wife was entirely useless?

Further it is said, for the same reason *Kerman v. Howard* goes beyond the *Archibald Case* it goes beyond the Massachusetts cases. That suggests that there is some line of consistency between the two, when, as we have seen, they are as opposite as the poles, one holding that the insured may assign his policy, conveying the whole interest regardless of the wife where she is the beneficiary, and the other that she may assign the whole policy regardless of the husband.

The legislative purpose in changing the law in 1891 can be best seen by viewing the conditions then existing with the vision unclouded by the idea that prior thereto our decisions were to some extent in harmony with those of Massachusetts under a similar statutory condition, and keeping in mind the isolated situation of our court, not only as to the judicial policy of Massachusetts, but courts generally on the subject, and the radical differences between the statutes of the two states which furnish some reason for judicial conflict. It hardly helps to refer to *Central Bank v. Hume,* 128 U. S. 195, 9 Sup. Ct. 41; *Glanz v. Gloeckler,* 104 Ill. 573, and like cases holding that where one takes out a policy of life insurance upon his life for the benefit of another, that other, as a

matter of course, upon the issuance of the policy becomes the
absolute owner of the entire beneficiary interest therein, the
contract not providing otherwise, some of such cases going so
far as to hold that the contract is in effect with the beneficiary.
*Glanz v. Gloeckler, supra.*  A general reference to such cases,
in a way to suggest that they to any extent voice the law as
it existed here prior to 1891, or throw light upon the purpose
of such law, tends to confuse, rather than to aid in arriving
at a correct solution of the question under discussion.

Let us look at the origin of our statute as it existed in 1891,
and point out the differences between our original act and that
of Massachusetts, which we are told it so much resembles.
Ch. 82, Laws of Massachusetts for 1844, the so-called "parent
law," is in the main as follows:

"Section 1.  Any policy of insurance made by any insur-
ance company on the life of any person, expressed to be for
the benefit of a married woman, whether the same be effected
by herself or by her husband, or by any other person on her
behalf, shall inure to her separate use and benefit and that
of her children, if any, independently of her husband and his
creditors and representatives, and also independently of any
other person effecting the same in her behalf, his creditors and
representatives, and a trustee or trustees may be appointed by
any court authorized to appoint trustees, to hold and manage
the interest of any married woman in any such policy or the
proceeds thereof.

"Sec. 2.  Where a policy of insurance is effected by any
person on the life of another, expressed therein to be for the
benefit of such other, or his representatives, or for that of a
third person, the party for whose benefit such policy is made
shall be entitled thereto as against the creditors and repre-
sentatives of the person so effecting the same."

The law here supposed to have been modeled thereon,
ch. 158, Laws of 1851, is as follows:

"Section 1.  Any policy of insurance made by any insur-
ance company on the life of any person, expressed to be for

the benefit of a married woman, whether the same be effected by such married woman or by her husband or by any other person on her behalf, shall inure to her sole and separate use and benefit and that of her children if any independently of her husband and of his creditors and representatives, and also independently of any other person effecting the same ·in her behalf his creditors and representatives and in case of the death of the husband of such married woman such policy and the benefit thereof shall not go to his executors or administrators but shall belong to such married woman, and shall be for her sole use and behoof and that of her children.

"Sec. 2.   That in case of the death of any married woman for whose benefit and that of her children such policy of insurance was effected it shall and may be lawful for any court having authority to appoint guardians for the minor children of such deceased married woman, which guardian so appointed shall have power to hold and manage the interest of such minor children in any such policy or the proceeds thereof.

"Sec. 3.   When a policy· is or has been effected by any person on the life of another, expressed therein to be for the benefit of such other his representative or for that of a third person, the party for whose benefit such policy is made shall be entitled thereto, as against the creditors and representatives of the person so effecting the same."

A complete key to our law as it stood in 1891 must include ch. 80, Laws of New York for 1840, which is, in the main, as follows:

"It shall be lawful for any married woman, by herself, and in her own name, or in the name of any third person, with his assent, as her trustee, to cause to be insured, for her sole use, the life of her husband for any definite period, or for the term of his natural life; and in case of her surviving her husband, the sum or net amount of insurance becoming due and payable, by the terms of the insurance, shall be payable to her, to and for her own use, free from the claims of the representatives of her husband, or any of his creditors; but such exemption shall not apply where the amount of premium annually paid shall exceed three hundred dollars."

That was substantially adopted here by ch. 182, Laws of 1862, in these words:

"It shall be lawful for any married woman to cause to be insured for her sole use, the life of her husband, her son, or any other person, for any definite period, or for the time of the natural life of such husband, son or other persons [person]; and in case of her insuring such husband, son or other person, the sum or net amount of the insurance becoming due and payable by the terms of the insurance, shall be payable to, and for the sole use of such married woman, free and exempt from the claims of the representatives of such husband, son or other person, or of their or any of their creditors, respectively: *provided,* that such exemption shall not apply where the amount of the premium annually paid shall exceed three hundred dollars, unless it shall appear that such premium shall have been paid out of the moneys or funds belonging to such married woman; *and provided further,* that such exemption shall apply to the insurance money covered by the premium annually paid up to and including the sum of three hundred dollars."

The main features of the act of 1851 and the act of 1862, the former, however, not being specially referred to, were embodied in sec. 19, ch. 59, Laws of 1870, which, without material change, constituted sec. 2347 of the Statutes, prior to the act of 1891. Such section may be conveniently presented for analysis by numbering the significant parts, inclosing in parentheses those which in letter or substance are like the Massachusetts law, and inclosing in dashes those which are in letter or substance like the New York law adopted here, as stated.

1.—"Any married woman may, in her own name or in the name of a third person as her trustee, with his assent, cause to be insured for her sole use the life of her husband, son or other person for any definite period, or for the natural life of such person;—2. (and any person, whether her husband or not, effecting any insurance on his own life or on the life of another, may cause the same to be made payable) or as-

sign the policy (to a married woman) or to any other person in trust for her benefit; (and 3. every such policy, when expressed to be for the benefit of) 4. or assigned—or made payable to (any married woman)—5. or any such trustee, 6. (shall inure to her separate use and benefit and that of her children,) 7.—and in case of her surviving the period or term, of such policy the amount of the insurance shall be payable to her or her trustee for her own use and benefit,—8.—(free from claims of her husband and of the person effecting and assigning such insurance and from the claims of their respective representatives and creditors.)—"

It will be seen that 1. was taken from our act of 1862 and "as to insurance upon the life of the husband" is from the New York act of 1840, and is not in the Massachusetts law in any form. 2., as regards policies expressed to be payable to married women, is in our act of 1851 and the Massachusetts law of 1844. That part as to policies assigned to a married woman is not in either act. It appears first in our act of 1870, which was framed with special reference to the law of 1862, but without any mention of the law of 1851. 3. is in the Massachusetts law and in our act of 1851. 4., as to policies payable to married women, is wholly from our act of 1862, and as to policies assigned to married women is first found in our act of 1870. 5. is first found in the law of 1870. 6. is in the Massachusetts law and our act of 1851. 7., a vital feature, is not in the Massachusetts act. The idea thereof is in our act of 1851, and the phrasing adopted in the act of 1870 followed the law of 1862. Aside from the word "benefit," which makes the clause more emphatic, it is the exact counterpart of the New York act and our law of 1862. 8. is found in the Massachusetts law and our act of 1851, so far as applicable thereto, and in the act of 1862, so far as applicable thereto, with changes to harmonize with the new features added in 1870.

Thus it will be seen that our law, prior to the act of 1891,.

originated in 1870, without any special reference to the law
of 1851, but with special reference to the act of 1862, adopted
from New York.    The words "inure to the benefit of" in the
Massachusetts law, not being coupled with any provision as
to when the clause should operate, the court there held that it
operated instantly, making the policy the property of the
wife immediately upon its issuance.    In our law at first,
as shown, such words being coupled with others indicating
that the legislative intention was that the clause should be-
come operative only upon the maturity of the policy, the court
held that in the meantime it was in abeyance and its effect
conditioned upon who was the beneficiary at the maturity of
the policy.    There was no question but that under that fea-
ture of the New York law of 1840, as construed there prior
to its incorporation into our law of 1870, a policy within its
terms was the property of the beneficiary from the time of its
issuance, subject to be realized on by her and her only upon
the death of her husband, she surviving, regardless of the acts
of either in the meantime as to assigning the same.    A policy
of that character or any other, whether expressed to be for
the benefit of a married woman as in the former law and the
law of Massachusetts, or in any other way designed for the
benefit of such a person, was put into a general class, followed
by the words "shall inure to her separate use and benefit,"
"and in case of her surviving such period or term the sum or
net amount of the insurance becoming due and payable by
the terms of the insurance shall be payable to her, to and for
her own use and benefit," thus giving significant prominence
to the feature of the New York system not found in that of
Massachusetts, largely influencing the holding in the former
that such a policy was not assignable, at the same time pre-
serving that feature which formed the only justification for
the doctrine that the word "inure" referred to the maturity
of the policy, and if the married woman was not then the ben-
eficiary, which depended wholly upon the will of the husband,

she could not take the insurance. The further feature of the Massachusetts law which contemplates the appointment of a trustee for a married woman to manage *the policy and the proceeds,* suggesting care by and for her of the policy as her individual property before its maturity, is not found in our act of 1851, nor any other legislation here on the subject. The absence thereof harmonizes with the idea that the legislature intended the beneficiary not to have any interest in the policy, except in the event of her surviving the termination of the policy period, and her status as beneficiary not having been terminated in the meantime by the act of the assured.

When our act of 1862 was passed it was not doubted anywhere, as we understand, but that a policy of insurance payable to a married woman, as the statute seemed to plainly say, would inure to her benefit in case of her surviving the policy period. It has not yet been held in Massachusetts that the beneficiary interest of the woman could be sold by her or taken adversely by her creditors, while this court had not yet held that the statute did not interfere with the absolute control by the insured over the policy during his lifetime. It was not so held till 1868. *Kerman v. Howard,* 23 Wis. 108. It seems that the legislature in adopting the New York law as an independent act must have had a distinct purpose in view, other than to enable a married woman to take out a policy of insurance upon the life of her husband or another, because that existed by necessary inference from the act of 1851, and independently thereof. The legislature must also have had a definite purpose in passing the act of 1870, in putting the law in the form it existed in 1891, without special reference to the law of 1851, but with strict regard to the law of 1862, by which all policies payable to married women, issued upon the lives of others, were put in one class and it was provided that upon the woman surviving till the termination of the policy period the proceeds should be paid to her for her sole use and benefit, using the feature in that regard

of the New York law which had been seven years before held in *Eadie v. Slimmon,* 26 N. Y. 9, to render the policy unassignable by any one in any way. That case was decided before this court had taken its stand or Massachusetts had declared the effect of its law. When our act of 1870 was framed the conflicting attitudes of the courts were fully known. The fair explanation of the conflict at first was the variances between the laws, which we have noted, indicating that the legislative purpose here was that the interest of the married woman should only attach at the maturity of the policy. The legislature may have sought to make such purpose apparent as to all policies for the benefit of married women, not issued on their own lives, by framing the law of 1870 without special reference to the act of 1851, but with such regard to the act of 1862, preserving the feature as to payment to a married woman in case of her surviving the policy period and making it applicable to all such policies. Does it not seem quite plain that the rule of *Eadie v. Slimmon, supra,* was in mind at the time of the legislation of 1870, at least to the extent of its bearing on the rights of a married woman surviving till the termination of the policy period, she being then the beneficiary?

We see no force in the suggestion that the New York law only provided for widows, and that our act of 1862 and the feature thereof now in sec. 2347 includes married women not widows. The extension of the law merely extended the principle thereof.

The rule of *Eadie v. Slimmon* in New York is by no means confined to policies taken out by married women. It applies there to all policies payable to such women issued on the lives of others, so far as not otherwise provided in the written law. There is a strong reason for saying that it was so regarded at the time of the passage of the act of 1870, since a most significant feature of the law on which it was based was then,

as we have seen, *ex industria* made to apply generally to all policies therein mentioned, as before indicated.

We are wholly unable to see any reason for saying that the rule of *Eadie v. Slimmon* has been judicially changed in New York. True, there are expressions of judges, here and there, which can be gathered together, showing some disfavor, but, generally speaking, the indications are the other way, and the decisions are universally so. That there should be some judicial leaning towards the right of a married woman to dispose of her insurance as she sees fit need not be wondered at, but that the general trend of judicial authority in New York is in favor of protecting such persons against danger of parting with their policy rights before maturity, seems certain. No discredit should be cast on the early New York case, because it was founded on a law as to the rights of married women before their emancipation from common-law disabilities. After such emancipation, and some twelve years after the early decision was rendered, it was carefully reviewed in *Barry v. Equitable L. A. Soc.* 59 N. Y. 587, and there in the light of the new situation, upon the ground of *stare decisis* and reason as well, looking at the matter as an original proposition, it was approved. So important did it seem that the principle early declared should not be judicially impaired that the court went somewhat out of its way to say:

"Legislation enlarging the legal capacity of married women does not supersede the act of 1840, nor give to them other power to deal with a policy issued under it than they had by it; for the reason that the act is an enabling act, confers a special privilege, and is in the nature of a law exempting goods from execution; that the privilege is given in view of an especial legislative intention and policy, which would be subverted if the contingent interests arising under it could be treated and dealt with as the separate property of a married woman, to be disposed of or affected by her subsequent contracts."

The legislative change authorized a married woman with the consent of her husband to assign her beneficiary right, and whereas before upon the maturity of a policy the proceeds were required to be paid to her for "her sole use," etc., thereby the same was required to be paid "as her sole and separate property." The court regarded the substitution of "as her sole and separate property" for "for her sole use," and the substitution of partial for total disability, as to the assignability of the beneficiary right, as requiring it to hold such right assignable upon the conditions precedent mentioned in the statute, and that as soon as payment of the policy to the beneficiary herself ceased to be contingent the policy right was liable for her debts the same as any other of her "separate property."

It will not be profitable to extend this opinion by giving a history of *Eadie v. Slimmon* outside of New York. We venture to say, however, that it has never been disapproved in face of a plain written law exempting a married woman's beneficiary right from the claims of creditors of the assured, and providing that at the maturity of the contract the proceeds of the policy shall inure to her separate use and benefit and that of her children, and in case of her surviving shall be payable to her and no one else. The significant words of the original New York statute, as adopted here, which, as shown in *Amberg v. Manhattan L. Ins. Co.* 171 N. Y. 314, 316, 317, 63 N. E. 1111, needed to be changed before the beneficiary right could be reached by creditors, even after the maturity of the policy, prior to the proceeds reaching her hands, are present today in our statute and are absent from the Massachusetts statute, as we have seen.

In view of the foregoing it seems plain that there is no harmony between the decisions here and those of Massachusetts, or those here and elsewhere, or between the Massachusetts statute and ours, which furnishes any key to the legislative purpose intended to be expressed in the act of 1891.

Until *Ellison v. Straw* our status was one of complete isola-
tion. We had a combination of the statutory systems of Mas-
sachusetts and New York and some new features, and our
decisions were entirely out of line with those of both states
and decisions elsewhere. Our law at first provided that an
insurance policy upon the life of a husband expressed to be
for the benefit of his wife should inure to her own benefit
and that of her children, free from any claims of his creditors.
That taken by itself, as an original proposition, one might
well say was intended to secure to the wife and and her only,
she surviving the assured, the right to the proceeds of the pol-
icy beyond his power to defeat it other than through some
valid provision forfeiting the contract. Subsequently it was
further provided that if the wife survived the assured "the
amount of insurance shall be payable to her . . . for her own
use and benefit," free from the claims of others, and the two
features were joined in one general provision after that bor-
rowed from New York was construed there and Massachu-
setts had taken its stand on the feature adopted from there
and this court had held differently in respect thereto as re-
gards the features in combination. Probably a layman at
least would say the legislative purpose was unmistakable to
preserve the wife's beneficiary right so that in the event of
her surviving the policy period the proceeds would come to
her and to her only, and for her use and hers only, subject,
of course, to be treated after so coming the same as any other
of her "sole and separate property," yet this court adhered
for years to the policy of isolation before indicated. As stated
in *Ellison v. Straw*:

"Notwithstanding studied efforts of lawmakers, by statu-
tory restrictions, to guard life insurance made payable to a
married woman, so that she will enjoy the same in case of her
surviving till the maturity of the policy, to take according to
the terms of the contract, the door was left wide open, under
the judicial policy of this state, for the person taking out the
policy and paying the premiums, she being a mere beneficiary,

to destroy her rights in that regard at any time at his pleasure, by designating some other beneficiary to take in her place, or by disposing of the insurance by will."

Though the statute permitted easily of a contrary reading, till the maturity of the policy with conditions unchanged the beneficiary was regarded as having no interest therein which the assured was bound to respect.

Such was the situation faced by the legislature of 1891. *Eadie v. Slimmon* had been reconsidered in New York in the light of legislation there affecting it and affirmed upon principle and authority and held applicable to all insurance in favor of married women upon the lives of others payable to them at maturity. The significant statutory feature giving rise thereto, in part, had been incorporated into our system. The common idea of such insurance was to extend help to women in widowhood, or women with future possibilities in that regard, and to put efforts in that respect beyond the power of the beneficiary and that of any one else to defeat the same. With that picture in view, as the legislature must have seen it, what was intended by what it did, if there is any uncertainty in respect to the matter, is strongly suggested by what men would naturally do under the circumstances. If there be any idea more remote from the thoughts of men in general in taking out life insurance of the kind under consideration than any other, it is that the policy when obtained will be mere free property in the hands of the wife as soon as secured, subject to be disposed of by her at pleasure. In the light of the well-known rule for statutory construction, "the court should look to the whole and every part of the statute, and the apparent intention derived from the whole, to the subject matter, to the effects and consequences, and to the reason and spirit of the law, and so construe it as to harmonize and give a sensible effect to every portion" (*Harrington v. Smith,* 28 Wis. 43)—can we well doubt what the real legislative purpose was?

What was required in 1891 to make effective what we venture to affirm is the common thought as to insurance for the benefit of a wife? The law then provided that the insurance "shall inure to her separate use and benefit" . . . and upon maturity "shall be payable to her for her own use and benefit," free from the claims of her husband or any one claiming under or through him. That was inefficient because of the judicial construction, so firmly entrenched that only the legislature could remedy it, that the language related to the condition existing at the maturity of the policy which the husband could at his will control. There was nothing in our decisions suggesting that the wife's mere contingent right could be separated from the husband's right and sold by her or taken from her adversely, or that her consent to its transfer was necessary to enable the husband to sell the policy. We had the New York feature which, given its legitimate effect, would fully protect the wife subject to the right of the husband to allow the policy to lapse. The Massachusetts feature, under which immediately upon the issuance of the policy it was there held to be a subject of absolute ownership by the beneficiary, was not favored. It seems quite plain that the legislature supposed that what was needed to secure to the wife, and to her only, the beneficiary right in case of her surviving to take at the maturity of the policy, was to abolish the rule that existing statutes referred to conditions existing at the maturity of the policy, leaving the husband in the meantime in absolute control. What would most clearly accomplish that? Provide that the policy "shall be the sole and separate property of said married woman," placing those words before the words "shall inure to her separate use and benefit," thereby leaving the courts no room for holding that the condition of "sole and separate" ownership was postponed to the time to which it had formerly been held the words "inure to her separate use," etc., pointed, and emphasizing the interpolated words beyond all possibility of misapprehension as to

their import by placing between the words "free from," etc., and the words "claims of her husband," etc., the words "the control, disposition or." That, omitting parts not material here, being done, the law took this form:

(New York feature) "Any married woman may, in her own name . . . , cause to be insured for her own use the life of her husband, . . . ; and (Massachusetts feature in effect) any person, whether her husband or not, effecting any insurance on his own life . . . may cause the same to be made payable . . . to a married woman . . . ; (Massachusetts feature) and every such policy, when expressed to be for the benefit of_ . . . (New York feature) made payable to (joint feature) any married woman . . . , (new feature) *shall be the sole and separate property of such married woman and* (Massachusetts feature) shall inure to her separate use and benefit and that of her children, (New York feature) and in case of her surviving the period or term of such policy the amount of the insurance shall be payable to her . . . for her use and benefit, free from (new feature) *the control, disposition or* (New York and Massachusetts feature) claims of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors."

With the thought that was given to the matter when *Ellison v. Straw* was decided it became manifest to us all that the legislature intended by the act of 1891 a radical change. That idea has been confirmed by subsequent study. It seemed to us all then that the right of the matter had been reached. No favor was given then to the idea which now prevails, but it was thought to be quite clear that the legislature intended to so provide that the right of a married woman, when a beneficiary in a life insurance policy, would be contingent only upon the policy being kept in force and her surviving to take under it; that till the proceeds thereof were reduced to possession they should be safe from imprudent conduct on her part and the acts of others, in harmony with the presumed intent of the assured person in such cases. It was thought then that

the will of the legislature in that regard was quite plain, and it seems to me so now. It was reasoned then that if the legislation permitted of two constructions, that one should be adopted giving to a married woman the fullest measure of protection at the maturity of her policy right. It was supposed that the legislature had taken radical action to eradicate completely the system that had grown up here as to the rights of such persons in such circumstances. The disinclination of the court theretofore to recede from its ancient moorings in the face of a legislative command, so to speak, to do so, the court being so entrenched in such position that such command was not appreciated, was seen, in that while the legislative purpose seemed plain the court, when first called upon to act in the matter in *Strike v. Wis. O. F. M. L. Ins. Co.* 95 Wis. 583, 70 N. W. 819, said no change was intended from the rule of *Foster v. Gile,* 50 Wis. 603, 7 N. W. 555, 8 N. W. 217. So a studied attempt, after a careful analysis of the statute in all its aspects as to the right of the matter, was made to discover it, and all concurred in the reasoning and in the result.

In this opinion we have gone over the subject matter in hand as an original proposition without discovering any reason why the conclusions reached in *Ellison v. Straw* are not right as to the point under discussion. My remembrance is that the opinion correctly mirrors the discussions which led up to the writing of it.

It is suggested that the question of the assignability of a married woman's beneficiary right in a life insurance policy was not involved in *Ellison v. Straw;* that the sole question was whether such right could be seized and appropriated by creditors and that such question is not here, "but we have no disposition or purpose to indicate that, if it were, we should hesitate to adhere to that decision," thus affirming the adoption of the rule of *Eadie v. Slimmon* so far as it was grounded on the unassignability of the policy and rejecting the Massa-

chusetts rule in *Troy v. Sargent, supra.* One view is favored in harmony with Massachusetts, while the logical effect is rejected in favor of the New York idea, which springs from a construction of language which is here rejected.

In *Ellison v. Straw* the question of whether the policy was assignable was supposed to be the supreme test of whether it could be taken from the beneficiary in adversary proceedings for the payment of her debts. I am entirely unable to appreciate the statement that the consideration of the supposed underlying question was beyond the ultimate one to be decided. Is it true that it is not legitimate in reasoning up to a conclusion as to the existence of a fact in controversy which is assumed, rightly as is supposed, cannot exist in the absence of either of several other disputed facts, to take up the minor propositions, either of which being solved in the negative would demonstrate nonexistence of the ultimate disputed fact? If so, our ideas of logic are all wrong.

One of the turning points in all discussions in New York as to whether a policy could be seized by the creditors of the wife was whether it was assignable by her. *Baron v. Brummer,* 100 N. Y. 372, 3 N. E. 474; *Amberg v. Manhattan L. Ins. Co.* 171 N. Y. 314, 63 N. E. 1111. Our statute nowhere says expressly that the beneficiary right of a married woman at any time shall be exempt from the claims of her creditors. If it is her absolute property presently, as held in Massachusetts and elsewhere, there is no legitimate ground for holding it to be beyond the reach of creditors, except that it is unassignable under the law declaring that it shall be paid to her for her use and benefit at maturity.

Before we are through with this subject we must take hold fully and firmly of one horn or the other of the dilemma which our statute and previous holdings present. That, it was supposed, was fully appreciated in *Ellison v. Straw* and involved, necessarily, consideration of whether the policy was

assignable or not. The point there urged most strongly upon the court, as it would appear from the opinion, and as the fact is, as abundantly shown by the briefs of counsel on both sides, is the one now said to have been outside the case. I would not venture to go this far if the matter rested only in memory, however much it may be said to be corroborated by the opinion. The briefs used upon the argument leave the matter unmistakable. I must assume that they were not carefully examined in the preparation of the opinion of the court. My remembrance is that the point given the greatest attention then, as the surest test of whether the policy was attachable, is the one now turned aside as not having been rightly considered. We are unable to see now how any logical basis can exist under the statute for holding that the policy right cannot be reached by creditors in an adversary way, and yet that it is a mere chose in action subject to be transferred by the beneficiary at her will in advance of maturity.

It is urged that in deciding the former case *Archibald v. Mut. L. Ins. Co.* was overlooked. My brethren of the majority take that view. I do not so remember it. The case was cited then and commented on in appellant's brief to the point that the policy was assignable by the beneficiary, and the respondent replied thereto briefly, saying that the language relied upon was a mere side remark and had no significance, the policy being assignable regardless of the attitude of the wife. The facts in that regard being perfectly apparent and not pressed upon the court particularly, the case was not cited in the opinion. It were better if it had been and the opportunity not afforded for saying it was overlooked. It was considered utterly unimportant as to the decision of the court.

One very important feature of our present situation, one that my brethren have entirely overlooked, remains to be mentioned. If appearances are not misleading, the doctrine of *Ellison v. Straw,* so far as not modified by the legislature, has

become incorporated into the written law. By ch. 15, Laws of 1903, enacted in view of the construction given by this court to the act of 1891, it was provided that

"any married woman may, with the written consent of the person effecting the insurance, assign, encumber or dispose of any right, title or interest she may have in, to or under any policy of life insurance, whether on the life of herself or her husband, or of any other person, and whether such policy be expressed to be for the benefit of or assigned or made payable to such married woman, or in trust for her, in the same manner and with like effect as if she were unmarried. The provisions of this act shall apply to all insurance on lives, whether effected before or after the passage of this act, but shall not apply to assignments thereof heretofore made."

While the retroactive feature thereof is probably not effective, the distinct recognition of the doctrine of *Ellison v. Straw* and effort not to go counter thereto as to assignments already made, and determination to remove the disability of married women to assign, under certain circumstances, by necessary inference provided that the policies not referred to should be wholly unassignable. *Expressio unius est exclusio alterius.*

The purpose of partially removing the disability of married women, as above, was probably to enable them to use their policies, under certain conditions, as security for borrowed money, thus partly undermining the common purpose of such insurance. It were better if the ordinary life policy for the benefit of a wife were not assignable at all before maturity, except to procure money when necessary to protect it. It were better if insurance companies would promote that system, instead of seeking to undermine the ancient beneficent purpose of such organizations, sacrificing that for the purpose of securing aid in the making of investments. But that is wholly a matter of policy, not entitled to weight here, except as it is helpful in determining the meaning of ambiguous laws involving the subject.

Now we will draw this opinion to a close, making no apology for its length, but again expressing regret that the point discussed could not have been left undecided till a conclusion could be reached that would be considered final under existing statutes. Since it was supposed that the question should now be met and a decision made that would at least reopen what would otherwise appear closed by *Ellison v. Straw,* duty impelled me also to go at length into the matter, expressing with fulness the grounds of my dissent from the court's conclusion. The judicial discussion on both sides will be helpful to bench and bar when the matter shall be presented again. In my treatment of the matter I have intended to cover the whole field, what has been decided and the legitimate effect, which I think will be claimed for it, contrary to that which my brethren suggest they would not hesitate to decide if it were now up to them to do it. Having taken a step in the wrong direction with the best of resolutions that we will not take another, when to go further, having started, is the natural or necessary consequence of the digression, it is most liable to occur, or a return movement be indulged in, or an incongruous position be adopted.

Our conclusion is that the judgment should be reversed, because the policies are governed by the law as it stood prior to 1891, but otherwise that it would have to be affirmed on principle and on authority of *Ellison v. Straw.*

SIEBECKER, J.   I concur in the opinion of MARSHALL, J.

KERWIN, J., took no part.